# William R. Holmes, Appellant, *v.* H. H. Woods and William N. Frew.

*Vendor and vendee—Marketable title—Specific performance.*

A recovery in an action of assumpsit for the purchase money due on a contract for the sale of land will have the effect of a decree for specific performance, and must be decided upon the same equitable principles.

A doubtful title which exposes the holder of it to litigation is not marketable, and the rule in equity is that the purchaser will not be compelled to accept it.

*Partition—Contingent interests.*

Contingent interests given by a will to persons now living, and to others yet unborn will not be divested by partition proceedings unless the persons living be made parties, and the interests of those unborn be submitted to the court and some one be appointed to represent them, or such order made for their protection as equity and justice require.

*Partition—Parties—Contingent interests—Marketable title.*

Plaintiff had two undivided eighth interests in land, subject to a life estate in his mother, which were liable to open to let in after-born children; and under the will by which his mother took, certain others had contingent interests in the land. Upon his mother's conveying to him her life estate in one eighth interest, plaintiff instituted proceedings for partition of all the land, wherein two of the defendants, being minors, appeared by guardian, and in which the interests of the unborn parties in interest were not submitted to the court for protection, and to which persons having contingent interests were not made parties. *Held*, that plaintiff did not obtain by the partition proceedings a marketable title to the one eighth portion assigned to him in such proceedings.

Argued Nov. 12, 1894. Appeal, No. 321, Oct. T., 1894, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., June T., 1894, No. 638, for defendants, on case stated. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover balance of purchase money under articles of agreement for the sale of land.

The facts appear by the opinion of the court by SLAGLE, J., which was as follows:

"This action was brought to recover a balance of purchase money on an article of agreement for the sale of a lot of ground on Fifth avenue, 22d ward, Pittsburg. The defendants refused

to accept a conveyance because they were advised by counsel that it would not give a good title. A case was stated by which it was agreed that if the court be of the opinion that the title to land is a good marketable title, then judgment to be entered in favor of plaintiff for $39,000, with interest, etc., but if not, then judgment to be entered for defendants for $1,000, with interest, etc.

" The lot in dispute was part of the estate of Andrew Fulton, deceased, and came to plaintiff by deed from Thomas C. Fulton, Jr., who obtained it through proceedings in partition at No. 596 June term, 1893, in court of common pleas No. 1, of Allegheny county.

" It is contended by defendants that these proceedings did not vest a good title in Thomas C. Fulton, Jr.

" 1st. Because he did not have an estate which entitled him to demand partition. 2d. Because certain parties living, and others who might be born, had contingent interests which would not be barred by the proceedings. 3d. Because partition could not be demanded of this lot, which is a small part of a larger tract in which the parties were jointly interested.

" It is therefore necessary to inquire who were the parties to the proceedings in partition and what were their respective interests.

" The proceedings were by bill in equity, filed by Thomas C. Fulton, Jr., as plaintiff. The defendants were Thomas C. Fulton, Sr., plaintiff's father; Margaret M. Fulton, his mother; Jane M. Fulton, his sister; James Cooper Fulton and Andrew Fulton, his brothers, who were minors, represented by John Paul, their guardian, and John Paul, trustee and executor d. b. n. c. t. a. of Andrew Fulton, deceased.

" The property belonged to Andrew Fulton, who died July 30, 1867, having made his last will and testament, which was duly proved and is made part of the case stated. The will is lengthy and contains many complicated provisions, but the conditions are easily understood. By the second clause of the will he devised to his daughters Jane and Margaret, seven lots on Smithfield street, three lots on Grant and Fourth streets, and five acres upon which he lived, of which the lot in dispute is part. The devise was subject to conditions and limitations, as follows:

" 1st. To Jane and Margaret in equal shares for life, each having the power to appoint in fee by will, with the single limitation that she should not give any part of it to her husband, if any she have.

" 2d. In default of such disposition by will by either of said daughters, her half is devised in fee to any child or children living at the time of her death, and this to include grandchildren to take per stirpes.

" 3d. In case of the death of either of said daughters without children or grandchildren living, and without having made an appointment by will, her share to go to her sister for life and subject to the limitations as to her share.

" 4th. If both of said daughters should die without leaving children and intestate, the estate was devised to the children of his sons, Samuel and Andrew, and to his adopted son Harry in equal shares.

" 5th. Having prohibited certain uses of the property and the incumbering it by his daughters, it is provided that any violation of these conditions by either shall work a forfeiture of her interest, and the same is devised to the executors, their survivors, survivor or successors in trust to dispose of the same as if she were dead.

" The daughter Jane died intestate and leaving one son, A. Fulton Dilworth. This rendered the fourth condition impossible, so that the devisees mentioned in this clause can never take under it. And Mrs. Dilworth having died before Margaret, if Margaret should die without children and intestate, the third clause would be inoperative, and there being no other provision for its disposition it would revert to the estate of Andrew Fulton, and as to it he would die intestate, and it would be divisible among his heirs.

" Upon the death of Jane the undivided one-half of the entire property vested in her son, A. Fulton Dilworth, in fee.

" A. Fulton Dilworth died April 25, 1886, having devised all of the undivided half of all the above described properties to ' Margaret M. Fulton for life, with remainder to her children, share and share alike,' subject to an annuity of $1,000 to John Paul, payable out of the rents.

" By deed of May 3, 1893, Thomas C. Fulton, Sr., and Margaret M. Fulton, his wife, conveyed to Thomas C. Fulton, Jr.,

her life estate in the undivided eighth part of the property described in the partition proceedings, which became vested in him by will of A. Fulton Dilworth.

" At the time the bill was filed by Thomas C. Fulton, Jr., his interest in the property described, and of which he claimed partition, was an undivided one eighth interest during the life of Margaret Fulton, one undivided one eighth in remainder derived from A. Fulton Dilworth, and a contingent remainder in one eighth under the will of Andrew Fulton. Neither of these remainders are limited to the property described; both relate to other property, of which this is part, and the interest derived from A. Fulton Dilworth, though vested, is liable to open to let in after-born children of Mrs Fulton : Gernet v. Lynn, 31 Pa. 94 ; Ross v. Drake, 37 Pa. 373.

" The first question raised is, did Thomas C. Fulton have such an interest in this property as justified the partition made ?

" He did not have the right in respect to that part of the estate devised to his mother by Andrew Fulton, having no vested interest in it. Nor did he have such right by reason of the vested remainder derived from A. Fulton Dilworth, because it was not ' an indefeasible estate, not subject to be diminished by a subsequent event' : Act of June 3, 1840, Purd. 1295, p. 31. His only right would then be by virtue of the life estate derived from his mother. He might have partition of this interest with his cotenant for life, but his right to partition of the entire estate depends upon a consideration of the interests of the defendants.

" Thomas C. Fulton, Sr., had no interest in the property, and was joined as the husband of Margaret M. Fulton. She had a life estate in all the properties mentioned under her father's will, subject to the conditions contained in it, and a like interest under A. Fulton Dilworth's will, except that portion conveyed to Thomas C. Fulton, Jr.

" Jane Fulton, his sister, and James C. and Andrew, his brothers, had vested remainders in the undivided half of the entire property under the will of A. Fulton Dilworth, and contingent remainders in the other undivided half under their grandfather's will, both in common with the plaintiff.

" As to that part derived from A. Fulton Dilworth it may open to let in children of Margaret Fulton hereafter born.

Though her age makes this improbable, there is a possibility of such issue which the law does not ignore : List v. Rodney, 83 Pa. 483.

"As to the other undivided half devised to Mrs. Fulton, there is the same possibility, and in addition the possibility of one or more of her children dying in her lifetime leaving a child, in which event such child would take not through his deceased parent, but directly under the will of Andrew Fulton, which expressly includes grandchildren of Margaret Fulton in the limitation of this property.

"But Margaret Fulton may fail to appoint, and her children may die in her lifetime without issue. In this case the property would go to the heirs of Andrew Fulton living or hereafter to be born. It is evident then that persons not now in existence may become interested in this property, and that on a contingency not remote, as for instance the death of one of Margaret Fulton's children in her lifetime leaving children.

"Partition of such an estate could not have been had before the act of June 2, 1840 : Gest v. Way, 2 Whart. 445.

"It is probable that the act of 1840 was passed to meet this case, which was decided in 1837. But the proceedings in partition do not appear to be in accordance with this act. The act requires that ' all existing persons interested be made parties.' If this relates to persons having a present vested interest, the children of Margaret Fulton are not properly joined as defendants, except as to the undivided interest derived from A. Fulton Dilworth, because their interest in the other undivided half is contingent and does not vest until the death of their mother. If it includes persons having contingent interests, the heirs of Andrew Fulton now living should have been made parties, for their interest vests on one other contingency.

"However this may be, there does not appear to have been any proper compliance with the law as to parties unborn who may become interested in the estate. The act provides that ' for the protection and security of the interests of any unborn person or persons the court shall have the authority to make such order in regard to the purpart in which he may become interested as equity and justice may require.'

"Though this simply gives authority to the court, it is manifestly its duty to make such orders. In all cases of partition

it is proper, if not necessary, to name or describe as far as possible all persons who are or may become interested in the property to be divided, that the court may act intelligently in ascertaining and administering the rights of parties. In cases where persons unborn may become interested it is essential that that fact should be stated in order that appropriate action might be taken to protect their rights. Otherwise the provis-ions of this act could not be enforced, and such parties would not be concluded. In these proceedings there was no sugges-tion that any other persons than the parties named were or could be interested.

"But it is contended that it is sufficient to bring in the first remaindermen, and counsel cites: Giffard v. Hort, 1 Sch & Lef. 386, and Hopkins v. Hopkins, 1 Atk. 593. But these were cases of estates tail, the remaindermen having vested estates of inheritance. In Freeman on Partition, sec. 482, commenting on these cases, it is said: 'But in order to bind the interests of persons not in esse, the proceedings must be adapted to that purpose. If no mention is made of such interests, and the pleading and judgment are founded upon the theory that the persons in being before the court are the only persons having any estates or interests in the property, then no interests are affected except those vested in the parties before the court.' This is the principle embodied into the law of 1840. But it is said that all such parties were in court in the person of John Paul, who was made a defendant as 'trustee and execu-tor d. b. n. c. t. a. of Andrew Fulton, deceased.'

"He is not mentioned in the partition proceedings as repre-senting those interests, and we do not find that he is clothed with any such authority by the will. The only reference to the executors in relation to this property is the provision that the life tenants shall not incumber it without their consent, and in case the life tenants violated any of the directions as to its use, it is devised to them in trust to dispose of the same as if she were dead. The first clause gives him no interest in or control over the property itself, and the second merely creates a con-tingency upon which he may acquire title. He may therefore be a proper party to the proceedings in partition, but there is no intimation in the will that he shall represent the contingent interest of parties living or to be born, nor is there any sug-

gestion in the bill that he is made a party for such purpose. It is true that he gave a bond upon receipt of a portion of the appraised value of the property which might be construed to inure to the benefit of all persons who may hereafter become interested, but as he is not charged with such duty by the will, and it was not ordered to him by the court, as the representative of such parties it cannot be regarded as a compliance with the provisions of the act of 1840.

" That act contemplates more than giving security for money after proceedings have resulted in a sale of the property or conversion into money of some of the purparts by appraisement. Persons unborn have the right to be represented throughout the entire proceedings by some one appointed by the court. At least their interests should be set forth and presented to the court so that orders might be made ' as equity and justice may require.'

" For these reasons we are of the opinion that the interests of the heirs of Andrew Fulton living or unborn, and the possible children of Margaret Fulton and of her children are not concluded by the proceedings in partition at No. 596, June term, 1893.

" But there are other objections to these proceedings which may cast a cloud upon the title, if they do not make it entirely void. Before the conveyance to Thomas C. Fulton, Jr., Margaret Fulton was the owner of a life estate in the entire property. She could not then maintain proceedings in partition, for the reason that partition operated on the possession, and she having the sole right of possession there was nothing to divide: Seiders v. Giles, 141 Pa. 93. Can she by a sale of a portion of her life estate in part of the land confer on her grantee the right to demand partition of that part ?

" It is very clear that one tenant in common cannot by a sale of his interest in part of the premises confer upon his grantee the right to demand partition of that part. In some states said conveyances are disregarded, but in those in which they are recognized they are held not to affect the rights of other cotenants : Freeman on Partition, secs. 199, 200–466 ; Miller on Partition, 48.

" In our own state it has been held that the entire estate held in common must be brought into the proceedings : Rex v. Rex,

3 S. & R. 533; Harlan v. Langham, 69 Pa. 235. The reasons for these rules are strongly stated by Justice SHARSWOOD in this last case.

" The same mischief would result by permitting a life tenant who had no right to partition to confer upon one of the tenants in common of the remainder the power to demand partition of part of the tenement by granting to him an undivided portion or all of her life estate in that part. If that can be done the entire property may be disposed of piecemeal by conveying such interest from time to time, and thus prevent the partition of the estate in the mode which the law contemplates and to which the parties interested are entitled, and by the same means the life tenant and one of the tenants in common would have it in their power to effect a conversion of the entire property by selling such interests in parts which could not be subdivided. They may thus effect the sale by proceedings in the common pleas of property of which the orphans' court has exclusive jurisdiction.

" Two of the children of Margaret Fulton, defendants in this case, are minors appearing by guardian. Though such proceedings may bind parties to the record able to consent, it is more than doubtful whether a guardian can bind his ward by such consent, and surely the decree would not bind persons who having contingent interests were not made parties, or persons unborn whose interests were not submitted to the court for protection.

" The title to the property mentioned in the agreement for sale is in our judgment not marketable, and therefore the defendant is entitled to judgment on the case stated.

" And now, to wit, October —, 1894, this cause came on to be heard on a case stated, and it having been argued in open court by counsel for plaintiff and defendants, and the court having fully considered the same, it is ordered, adjudged and decreed, that judgment be entered in favor of the defendants and against plaintiff in the sum of one thousand one hundred and eighty-three and thirty-three hundredths dollars, and costs."

*Error assigned* was above judgment, quoting it.

*George P. Hamilton, John A. Wilson* with him, for appellant,

cited as to conclusiveness of the decree of the orphans' court:
Herr v. Herr, 5 Pa. 428; Painter v. Henderson, 7 Pa. 48; Lair
v. Hunsicker, 28 Pa. 115; Gesell's App., 84 Pa. 241; Markelien
v. Trapnell, 34 Pa. 42; act of July 7, 1885, P. L. 257; Frank-
lin Savings Bank v. Taylor, 9 U. S. 406; Giffard v. Hort, 1
Sch. & Lef. 386; McArthur v. Scott, 113 U. S. 340; Hopkins
v. Hopkins, West, Ch. 606; Cholmondeley v. Clinton, 2 Jac.
& W. 1; Mullins v. Townsend, 5 Bli. N. S. 567; Ex parte
Dering, 12 Sim. 400; Calvert on Parties, 253.

As to contingent remainders: Miller on Partition, 60; Rex
v. Rex, 3 S. & R. 533.

*Wm. W. Wishart,* for appellees, cited as to contingent remain-
ders: List v. Rodney, 83 Pa. 483; McBride v. Smith, 54 Pa.
245; Peirce's App., 4 W. N. C. 439; Calahan's Est., 7 W. N.
C. 130; Mergenthal's App., 15 W. N. C. 441; Cannon's Est.,
16 W. N. C. 544; Reichard's App., 116 Pa. 232; Reiff's Est.,
124 Pa. 145; Woelpper's App., 126 Pa. 563; Gernet v. Lynn,
31 Pa. 94; 2 Blackstone's Com. 125; Coke on Littleton, 28;
3 Washburn on Real Property, 261; Seiders v. Giles, 141 Pa.
100; Harlan v. Langham, 69 Pa. 238; Everhart v. Shoemaker,
42 Leg. Int. 484.

As to the validity of the partition: Danhouse's Est., 130 Pa.
256; Fink's App., 47 Leg. Int. 424; Cubbage v. Franklin, 62
Mo. 364; Williams v. Hassell, 74 N. Car. 434; Outcalt v.
Appleby, 36 N. J. Eq. 73; Gerard v. Buckley, 137 Mass. 475;
Hill v. Jones, 65 Ala. 214; Springer v. Savage, 32 N. E. 520;
Gest v. Way, 2 Whart. 445; Seiders v. Giles, 141 Pa. 99; act of
June 3, 1840, Purd. Dig. 1295, sec. 31; Ziegler v. Grim, 6
Watts, 106; Stevens v. Enders, 1 Green Ch. 273; Culver v. Cul-
ver, 2 Root (Conn.), 278; Packard v. Packard, 16 Pick. (Mass.)
194; Baldwin v. Aldrich, 34 Vt. 526; Brown v. Brown, 8 N. H.
94; Norment v. Wilson, 5 Humph. (Tenn.) 310; Robertson v.
Robertson, 2 Swan (Tenn.), 201; Wilkinson v. Stewart, 74 Ala.
198; Simmons v. McAdams, 6 Mo. App. 297; Grisson v. Par-
ish, Phill. Eq. Eng. 330; Williams v. Hassel, 73 N. C. 174,
74 N. C. 434; Justice v. Guion, 76 N. C. 442; Simpson v.
Wallace, 83 N. C. 477; Parks v. Siller, 76 N. C. 191; Striker v.
Mott, 2 Paige, 387; Brewster v. Striker, 2 N. Y. 37; Mead v.
Mitchell, 17 N. Y. 210; Schori v. Stephens, 62 Ind. 441;

Hodgkinson et ux., Petitioners, 12 Pick. 374; Moore v. Appleby, 108 N. Y. 237; Nicol v. Carr, 35 Pa. 381; Freetly v. Barnhart, 51 Pa. 279; Swain v. Fidelity, etc. Co., 54 Pa. 455; Ferguson's App., 56 Pa. 487, n.; Dalzell v. Crawford, 1 Pars. Eq. Cas. 37; Kelly's Est., 2 W. N. C. 431; Holt's App., 98 Pa. 257; Mitchell v. Steinmetz, 97 Pa. 251.

OPINION BY MR. JUSTICE McCOLLUM, May 30, 1895:

Has the plaintiff a marketable title to the land described in the contract on which his suit is based? If he has he is entitled to recover the balance of the purchase money due on the contract, and if he has not, the judgment entered by the court below in favor of the defendant for the amount paid upon it must be sustained. While the action is in assumpsit for the purchase money a recovery in it would have the effect of a decree for specific performance, and for this reason the law, as well as the agreement of the parties, requires that it shall be decided on the equitable principles which would govern a chancellor on a bill filed for such a decree: Nicol v. Carr, 35 Pa. 381. A doubtful title or a title which exposes the holder of it to litigation is not marketable, and the rule in equity is that a purchaser will not be compelled to accept it. The rule on this subject is well stated by PAXSON, J., in Mitchell v. Steinmetz, 97 Pa. 251: "A decree for specific performance is of grace, not of right. It will never be made in favor of a vendor unless he is able to offer a title marketable beyond a reasonable doubt, nor against a vendee where he is able to show any circumstances which would make it unconscionable to do so." This statement of the rule is well supported by the decisions of this court in numerous cases, among which we may mention: Nicol v. Carr, supra; Swain et al v. Fidelity Ins. Co., 54 Pa. 455; Doebler's App., 64 Pa. 9; Swayne v. Lyon, 67 Pa. 436.

The land in dispute is part of the lands of which Andrew Fulton died seized, and which were disposed of by his will. Respecting his title to the land, or the construction of his will, there is no contention here. It appears to be conceded that under his will and by virtue of its provisions there are persons now living, and others yet unborn, who have contingent interests in the land, which, if not barred or divested by the parti-

tion proceedings hereinafter considered render the plaintiff's title unmarketable. The learned judge of the court below in a well considered and lucid opinion, referred to and designated these interests, and as the accuracy of his conclusions respecting them is not questioned, we pass directly to the consideration of the effect of the partition, which by common consent appears to be the pivotal point in the case. Were these interests barred, divested or extinguished by the partition proceedings under which it is claimed that Thomas C. Fulton, Jr., to whose rights the plaintiff has succeeded, acquired a marketable title? The learned judge of the court below after careful consideration of various matters affecting the question concluded that they were not, and he therefore entered a judgment in favor of the defendant. The matters so considered by him related to the right of Thomas C. Fulton, Jr., on whose bill the proceedings were instituted, to demand partition of the land in question; to what appeared to him as noncompliance with the law as to parties unborn who might become interested in the estate, and as to the representation in the proceedings of minors who were then interested in it. We cannot profitably add anything to what he has said respecting them and other matters affecting the plaintiff's title and authorizing the judgment appealed from. We have duly considered them in connection with our statutes and decisions relating to partition, and our conclusion is that the plaintiff has not a marketable title. The questions arising upon the case stated are important and not free from difficulty. They raise such doubts respecting the title as ought to induce a prudent man to hesitate in accepting it. As was said in Nicol v. Carr, supra, we do not enter into them, nor indicate any opinion how they ought to be decided, but we hold it as a very clear conviction that the defendant ought not to be compelled to pay for a title burdened by them.

Judgment affirmed.