# Estate of Henry W. Patterson. Appeal of George F. Dawson et al.

*Will—Legacy—Contingent bequest.*

Testator after creating an annuity for his wife and giving legacies of $30,000 each to his four sisters, gave the residue of his estate to his only child. He further directed as follows: "And if, at the expiration of ten years after my death the interest which I now possess in the Pittsburgh Steel Casting Company shall continue profitable, I then direct that $20,000 of an additional legacy be paid to each of my four sisters, but such payment shall be altogether discretionary with my executors." The dividends paid on testator's interest in the Casting Company for the seven years prior to his death were over $50,000. For the year prior to his death $22,000; for the ten years after his death about $11,000. The market value of the interest fell from $200,000 at the time of his death to about $50,000 ten years after his death. *Held*, that the additional legacies to testator's sisters were payable only out of the profits of the Casting Company, and that the contingency upon which they were payable had not happened.

Argued Nov. 8, 1895. Appeal No. 249, Oct. T., 1895, by George F. Dawson et al., from decree of O. C. Allegheny Co., Oct. T., 1894, No. 170, dismissing petition to compel executors to pay legacies. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Petition to compel executors to pay legacies.

The facts appear by the opinion of HAWKINS, P. J., which was as follows:

The question submitted in this case is whether or not certain contingent legacies given by Captain Patterson to his sisters, hereinafter recited, had become payable. The material facts are these:

Captain Patterson died May 31, and left a will dated April 8, 1882, by which, after giving his wife an annuity of $6,000, and the homestead for life, and legacies of $30,000 each to his four sisters, he provided as follows:

"And if, at the expiration of ten years after my death, the interest which I now possess in the Pittsburgh Steel Casting Company shall continue profitable, I then direct that $20,000 of an additional legacy be paid to each of my four sisters, but such payment shall be altogether discretionary with my executors."

The residue of the estate was given to testator's only child, Henry W. Patterson, Jr.

The dividends paid on Captain Patterson's interest in the Pittsburg Steel Casting Company for the seven years prior to his death were $52,460. For the year (1881) prior to his death, $22,000. For the ten years after, $11,214.

The market value of this interest at the time of his death was, in round numbers, $200,000. And ten years thereafter $51,000.

The petitioners object to the relevancy of any testimony in respect of the amount, but not of the fact of profits realized prior to Mr. Patterson's death, and insist that the continuance of any profits, however small, for ten years after his death was sufficient; consequently, that as such was the fact, the contingency has happened upon which the legacies were made payable, and they must now be paid.

2. But on behalf of the residuary legatee it was objected, (*a*) that payment of these legacies lies purely in the discretion of the trustees, and has been refused; and (*b*) the testator's interest in this company must have continued as profitable after as before his death, which was not the fact. And the trustee declined payment solely on the ground that under the facts within his knowledge he did not think that the condition on which the legacies were payable had been fulfilled, and that the discretion vested in him was exercised only in determining that question.

It is plain that this testator intended the contingent legacies given his sisters should be paid, if at all, out of the profits of his interest in the Pittsburg Steel Casting Company alone.

The whole corpus of the estate was, in the first instance, expressly given to testator's only son, subject to an annuity, and the homestead to his wife for life, and vested legacies of $30,000 each to his four sisters. This was the scheme of disposition of his estate as it existed at the date of his death, and these the preferred objects of his bounty. There is nothing necessarily inconsistent with this disposition in the provision of payment of additional legacies to his sisters. Why make them contingent upon continuance of profits, or, indeed, why refer to profits at all, unless as the source of payment? It is conceded that had testator's interest in the Pittsburg Steel Casting Company become unprofitable within ten years after his death, his primary

scheme of disposition would have become absolute; but why should the mere fact of continuance of profits, however small, subject the provision which testator had expressly made for his only son to further reduction on account of any deficiency in profits in favor of his sisters? Would the son need any less because of this fact? There is no apparent reason for such construction. These legacies would, by the terms of the will, become payable, if at all, because of the continuance, and by necessary implication, out of the profits.

The obvious intent was, that they should be paid if the business should continue sufficiently profitable to justify payment. The profits had been extraordinarily large during testator's lifetime; and had they so continued for ten years, the estate might well afford payment without embarrassment to the business, or impairing the provision which testator had made for his widow and son. This construction alone harmonizes with testator's original scheme of division of the corpus of his estate and with his manifest intent.

The question of fact then is, whether or not testator's interest in the Pittsburg Steel Casting Company continued sufficiently profitable for the ten years which elapsed after his death to justify payment of these additional legacies. The trustee, who is in a peculiarly advantageous position to judge intelligently, and to whom the decision of this question was primarily left, has refused payment; and, so far as appears, he is amply justified by the facts adduced.

The available profits realized during the whole period of ten years show an extraordinary falling off, and were, in the aggregate, far short of the amount necessary to pay these legacies. If the legacies are now to be paid, the necessary result must be a serious change in the scheme of division which testator in the first instance expressly declared, largely increase the already generous provision made for these sisters, and correspondingly impair the inheritance intended for his only son. At most, this construction is but a bare implication, and must yield to the manifest intent.

It is plain, therefore, that the contingency on which these additional legacies were made payable has not happened, and the petition must be dismissed with costs.

And now, to wit, January 10, 1895, this matter came on to

be heard at this term upon pleadings and testimony taken, and was argued by counsel, and thereupon upon consideration it is ordered, adjudged and decreed that the petition is hereby dismissed at the costs of petitioners.

*Error assigned* was above decree.

*Hill Burgwin*, for appellants.—Profit is the gain upon any business or investment when both the receipts and payment are taken into account: Rubber Co. v. Goodyear, 9 Wallace, 788; Eyster v. Centennial Board, 94 U. S. 504.

Where a condition is too uncertain to enable the court to say just what was meant by it the condition is void: Williams on Executors, 1275; Singerly's Est., 38 Leg. Int. 276; Eyster v. Centennial Board, 94 U. S. 500.

Powers that are purely arbitrary and independent, and not intended in furtherance of any trust, must be construed strictly, and do not survive: Lewin on Trusts, 536.

*D. T. Watson, Johns McCleave* with him, for appellee.—Under the will of the testator he left it to his executors to determine whether for the ten years succeeding his death his interest in the Pittsburg Steel Company continued profitable, and before the petitioners can recover they must show that the executors of his will had so determined. Instead of the case showing that the executors had so decided, it shows that they have decided exactly the contrary, and this is conclusive against the petitioners in the absence of proof showing fraud or want of good faith on part of the executors: Naglee's Est., 52 Pa. 154; Chew v. Chew, 28 Pa. 17; Pulpress v. African M. E. Church, 48 Pa. 204; Eldridge v. Heard, 106 Mass. 579; 2 Perry on Trusts, sec. 511; Snyder on Powers, sec. 190; Madison v. Andrews, 1 Very, 57; Nichols v. Eaton, 91 U. S. 716; Wilson v. Pennock, 27 Pa. 238; Liggett v. Hunter, 5 N. Y. 456; Byram v. Byram, 19 Bev. 66; Chandler v. Rider, 102 Mass. 268; Marshall's Est., 138 Pa. 260; Marshall's Est., 147 Pa. 77.

But even if the question were an open one, no one could doubt that on the testimony in this case the court below properly decided that the interest did not continue profitable. The court below has found the facts in our favor on this point, and

such finding will not be reversed unless plain error is shown: Harland's Accounts, 5 Rawle, 323; Ludlam's Est., 13 Pa. 187.

The legacy is demonstrative in its nature, and depends upon the performance of a condition precedent.

Whether the legacy is vested or contingent would seem to be immaterial, but if material it would seem clearly to be contingent.

A conditional legacy does not vest until the condition be performed: Gilliland v. Bredin, 63 Pa. 393; Campbell v. McDonald, 10 Watts, 179; Candler v. Dinkle, 4 Watts, 143; Pennock v. Eagles, 102 Pa. 290.

The court is always entitled to all the facts surrounding the testator at the time when the will is written, so that it can the more correctly read the words the testator used in the identical sense the testator used them: 1 Greenleaf on Evidence, sec. 287; Postlethwaite's App., 68 Pa. 477; Spark's App., 89 Pa. 148; Webb v. Hitchkins, 105 Pa. 91; Barnhart v. Riddle, 29 Pa. 97; Aldridge v. Eshleman, 46 Pa. 420; Jacob's Est., 140 Pa. 268.

*Hill Burgwin,* for appellants, in reply.—In cases of doubt the court favors the vesting of an estate at first possible time, when it does no violence to the expressed intent of testator: Cascadan's Est., 153 Pa. 170; Litchworth's App., 3 Pa. 175; McClure's App., 72 Pa. 414.

If the discretionary clause gave the executors any other power than that lying in the ordinary course of administration it created a trust for a collateral purpose and did not come within the act of April 24, 1834: Ross v. Barclay, 18 Pa. 179.

If trustees have a discretionary power they are not bound to give reasons for the way they exercised it, but if they do, and the court finds they erred, their action will be set aside: 2 Servin on Trusts, Wilkes' Charity, 3 Mac. & G. 440.

PER CURIAM, January 6, 1896:

A careful examination of the record in this case with special reference to the specifications of error has satisfied us that neither of them should be sustained. All that need be said in vindication of the decree dismissing appellants' petition will be found in the clear and concise opinion of the learned president of the orphans' court. On it the decree is affirmed and appeal dismissed, with costs to be paid by appellants.