———O———

, No. 3590.

(Court of Appeal, Parish of Orleans.)

## SUCCESSION OF THOMAS J. KENNEDY.

Appeal from Civil District Cout, Division "C."

N. E. Humphrey, for Administratrix, Appellee.

Howe, Spencer and Cocke, for Interstate Trust and Banking Co., Appellant.

1. It is not necessary to the validity of a succession sale made to pay debts, that the application of the succession representative for the order of sale should have been notified to the mortgage creditors.

2. A sale of succession property made to pay debts and under an *exparte* order of Court obtained by the succession representative binds the mortgage credtiors and *ipso juris* cancels the mortgage, and refers them to the proceeds.

3. After property has been sold at a succession sale under order of Court to pay debts, it is then too late for a mortgage creditor to complain that the application for the order of sale was made by the succession representative prior to the expiration of 30 days from his appointment, and that the property was sold on terms different from those stipulated in the act of mortgage especially when no injustice is shown to have resulted from either act.

4. When it becomes necessary for the mortgage creditor to contribute to the payment of the privilege debts of the succession, the burden of contribution falls on the junior mortgage even in cases where the creditors have different mortgages on different properties.

65

MOORE, J.  The administration of the Succession of Thomas J. Kennedy applied for and obtained, upon making due proof of the necessity thereof, an *ex parte* order of Court, to sell all the movable and immovable effects belonging to the said Succession in order to pay debts, and thereunder all said property was sold. The realty consisted of eleven distinct pieces of improved city property each of which being burdened with mortgages in favor of different persons; each mortgage being of different dignity.

Two of these properties were mortgaged to the Algiers Savings Bank to secure the payment of a note made by the deceased on the 14th day of February, 1903, for the sum of $2,000.00, bearing 8 per cent. per annum interest from its date and payable six months after date.   This note was subsequently transferred to the Interstate Bank and Trust Co., which still holds same.   By partial payment on account, and for the interest due thereon up to the 14th day of August, 1904, to which date its maturity was extended, the amount due thereon was reduced to $1,650.00.

Subsequent to the Succession sale, (which took place nearly two months prior to the maturity of the note), and in order to convey the several properties to their respective adjudicatees under the Succession sale, free of all mortgages placed thereon by the deceased and to refer same to the proceeds of sale, the Administratrix took a rule to that end contradictorily with the Recorder of Mortgages and all the mortgaged creditors, the Interstate Bank among the number.   In answer to this rule the Interstate Bank sets up the nullity of the sale because, *first,* the order of sale was obtained by the Administratrix *within* 30 days after her appointment; *second,* that the order was obtained ex parte, and, *third* because the probate Court had ordered the sale of the hypothecated property on terms different from those which the mortgagee is entitled to fix, "and which terms so fixed by the order injuriously affect the mortgagee."

The rule of the Administrix was maintained and from the judg-

ment so ordering the Bank appeals.

### I.

Articles 1164 and 1165 of the Civil Code, which provides that Succession representatives must wait thirty days after his appointment before demanding the sale of immovables belonging to the succession, which he is administering, to pay debts, specifically states the reason for the necessity of this delay, to-wit: "in order that he may know from the information he may get concerning the debts of the Succession, if it be necessary to sell them, (the immovables, in order to pay debts."

As these provisions are merely in aid of the Succession representative's acquisition of that knowledge, it is manifest, in our opinion, that if he can obtain, and does obtain, the requisite information before the expiration of that delay there ceases to be a necessity for him to longer wait.

I the case at bar the Anministratrix had obtained the amount and character of the debts of the deceased and filed a tableau of them on the faith of which she claimed the order of sale.

It is not pretended that this tableau does not contain a true statement of the debts, neither is it suggested that there was no necessity for the sale of the immovables, nor is it shown that any injury resulted to the mortgage creditors by what is termed the premature issuance of the order of sale. There was no right which the appellant, the Interstate Bank, might have asserted, which by the issuance of this order within 30 days of the Administratrix's appointment, it was prevented from asserting; nor can it be claimed, even, that if the Administratrix had waited the expiration of the 30 days after her appointment before applying for the order, the mortgage creditor could have issued executory process on its mortgage, because its debts did not mature until some three months after her appointment.

### II.

It is the first and paramount duty of Succession representatives

to watch over the interest of creditors and to see to and provide for the payment of their just claims against the Succession which they represent, and to that end they are vested by law with full power to provoke the sale of the personal, and if need be the immovable property of the Succession. C. C. 1668-1670, and this whether the immovable be mortgaged or unincumbered.

Whilst the right of the Succession representative to provoke the sale of mortgaged property is not exclusive in them yet, if the mortgage creditor does not proceed *via execution,* nor by application in the mortuary proceedings, the Succession representative may *initiate* and perfect the sale by obtaining an order therefor as the representative of all creditors. Suc. of Hood, 33 An. 470; Walmsby vs. Levy, 36 An. 226; and, under exceptional circumstances, an executory creditor may, even *after* an order of sale has been obtained in the Succession, but of course *before* the sale of the property, procure an order of seizure and sale and sell the property to the exclusion of the Succession representative. Suc. Adam Thompson, 42 An. 120; Levy and Carter Syndics vs. Thompson, 48 A. 537.

But there is neither law nor jurisprudence which requires for the validity of a sale of mortgaged property by the Succession representative, to pay debts, that the order be obtained contradictorily with the mortgage creditors and that other than such notice which they have from the application for the appointment of a representative for the Succession and the advertisement of the sale, they are entitled to special notice of the application to sell. French vs. Prieur, 6 R. 299, is the only case where, *after* a Succession sale of mortgaged property, and on a rule sued out to cancel the mortgage, the view was expressed that "it would seem but just that they (the mortgage creditors) should have some notice of an application to sell that on which their lien exists." This expression was pure *obiter,* as no such question was before the Court. The rule to cancel the mortgage was sued out in that case

68

against the Recorder of Mortgages *alone*. His answer was that being a ministerial officer, it is not his duty, or within his province to decide whether the mortgage should be cancelled and erased, or not, and he asked to be discharged. The only question presented to the Court and the only one urged by the Recorder, who was the appellant, (the brief of his counsel being printed in full on the report), was the right to proceed against him without making the mortgage creditor a party to the rule. The Court held that the latter was a necessary party and dismissed the rule.

But be that as it may this doctrine has never been followed, but the contrary has been repeatedly held. In Tertrou vs. Comeau, Sheriff, et al., 28 A. 633, a mortgage creditor enjoined the sale of the property which had been ordered sold by the probate Court on the application of the Administrator of the estate to which the property belonged. The ground urged was the nullity of the order "because, if the estate is solvent, notice of the application to sell must be given to the heirs, and reasonable notice be given to the interested parties; because, if the succession is insolvent, the administrator being the trustee of the creditors, his first duty is to them and all proceedings for the sale of the property must be carried on contradictorily with them; and because the order which forms the basis of the advertisement and of the proposed sale is *ex parte,* and is contrary to the will of the creditors, and would therefore be null."

The Court said: "The orders of sale were *necessarily ex parte;*" and, holding that no notice was necessary, affirmed the judgment which dissolved the injunction. This case is cited and affirmed in heirs of Herriman—Janney, 31, A. 280; and Lesseps vs. Laperre, 34 A. 117, in which a number of authorities to the same effect are cited. In Wells, etc., vs. Wells, etc., 25 A. 194, the mortgage creditor enjoined the sale of succession property, one of the grounds being "that as the mortgage creditor he had not been notified of the application for the order of sale." The Court said: "In answer to this it is sufficient to say

that a mortgage creditor has no right to enjoin the sale for want of notice of the application thereof when the sale was ordered to pay creditors having a higher rank, or preference over that mortgage creditor." The privileges in that case ranking the mortgages, as it is in this case and partly to pay which the sale was ordered, were funeral charges and judicial charges.

Succession of Adam Thompson, 42 A. 120, does not disturb these adjudications. As stated by the Court in that case:

"The question presented is simply; whether an order of sale procured by an executrix to pay debts can be rescinded on a rule at the instance of a first mortgage creditor who claims to be aggrieved thereby, and who seasonably asserts the right to proceed *via executiva* under his mortgage contract, which contains the clause *de non alienando.*"

Prior to that decision the jurisprudence was uniform that where succession property had been ordered sold by the probate Court at the instance of the succession representative for the purpose of paying debts, a *subsequent* order or seizure and sale of the same property at the instance of a mortgage creditor, and by a Court of ordinary jurisdiction, was in conflict with the assumed jurisdiction of the former Court, and therefore, irregular. 15 A. 663; 34 A. 663-873. This rule was not abrogated, but simply relaxed in succession of Thompson, (42 A. 120), to the extent of holding that "under the exceptional circumstances" of that case, as they are characterized by the Court in Levy & Carter Syndics vs. Thompson, Sheriff, et als., 48 A. 540, the mortgage creditor could inasmuch as the probate Court had not acquired jurisdiction over the property by any omission or laches on his part, proceed to set the order of sale aside by rule, and his subsequent order of seizure and sale, proceed to sell the property.

There are no "exceptional circumstances" in the case at bar, and even if there were it is too late to correct them, months after

70

the sale had taken place and, when then for the first time they are urged.

## III.

It may not be doubted that the mortgage creditor has the right, when the property on which his mortgage bears is to be sold at succession sale, to have the terms of sale conform to those stipulated in his act of mortgage, but to be entitled to this right, he must exercise it seasonably. He cannot wait, as in the instant case, until *after* the sale, and then when it is sought by rule to cancel his mortgage and refer it to the proceeds, complain that the terms of sale are different from those which he could have had the right to insist on had he acted at the proper time and in the proper manner. It is now too late for him to complain.

Besides this, and as applicable to all the other objections· raised by the Bank as it is to this one, no injury whatsoever was sustained by the mortgage creditor, so far at least as the record shows, either by the so-called premature granting of the order to sell, or by its issuance *ex parte,* or by the terms of sale being different from those stipulated in the mortgage. The properties on which its mortgage bears and which is the only mortgage thereon, sold for $1,925.00, or $275.00 more than the principal and interest of its debt; and it is shown that this surplus, added to the proceeds of the sale of the movables which are inventoried at nearly $6,000.00, will be sufficient to discharge the privilege debts which extend alike to movables and immovables; and when it is shown that in addition to this sum other pieces of real property, not covered by the Bank's mortgage, but which are burdened with a mortgage in favor of an other party, and which is junior in rank to the Bank's mortgage, sold for $2,750.00; which will, to this amount, augment the fund which must first be applied to the discharge of these privileges before

71

the property on which the Bank's mortgage rests can be called on to contribute; for the rule is that when it becomes necessary for the mortgage creditors to to contribute to the payment of the privilege debts of the succession, the burden of the contribution falls on the junior mortgage, C. C. 3269; and this is so even in cases where the creditors have different mortgages on different properties. Succession of Hautau, 32 A. 54.

We find no error in the judgment appealed from, and it is affirmed.