ELIZABETH H. SMITH

*v.*

CATHERINE J. SMITH, WILLIAM E. SMITH, her husband, and ALFRED W. LAW, executor of Alice M. Law, deceased.

[Argued October 1st, 1914. Decided April 1st, 1915.]

1. A decree for specific performance in favor of vendor's lands or chattels is seldom enforceable by contempt proceedings resulting in the imprisonment of the contumacious vendee until he obeys the court's mandate, by reason of the constitutional provision abolishing imprisonment for debt in any action or any judgment founded upon contract unless in case of fraud.

2. The proceedings available to a successful complainant in a vendor's suit for specific performance by which his decree can be enforced are those provided by section 46 of the Chancery act (*1 Comp. Stat. 1910 p. 427*), which includes process of sequestration against the real and personal estate of defendant, the writ of *fieri facias* against goods and lands, and *capias ad satisfaciendum* against the body of the defendant if the case is infected with fraud, and there is no practice warranting the enforcement of the vendor's right to specific performance by an absolute decree of a court of equity for the price and execution in the usual form while the vendor is allowed to remain the owner of the property which he agreed to sell and has the power to dispose of it; though it would seem that a lien might be established upon the property sold for the amount of the price and the property sold for the satisfaction of such lien all in one suit.

3. The theory of a vendor's suit for specific performance of the contract of sale is that the court will compel the carrying out of the contract on both sides, usually under the direction of a master.

4. In this state with the more convenient machinery of a court of equity available for the specific performance of contracts for the sale of real and personal property, the vendor electing to sue at law recovers not the price but the amount of his damages.

5. Where one advanced money to a corporation on mortgage and a third party executed a guaranty or an agreement to him stipulating that he would purchase the mortgage at its maturity, provided that the mortgagee would then tender an assignment of the mortgage or notify the purchaser of a desire to assign, and reciting that the purchaser or guarantor was then worth $10,000 in real estate, the vendor without assignment or tender of the corporation's mortgage was not entitled to a specific performance of the agreement, except as to the deficiency on subsequent realization of the corporation mortgage.

6. In such case one taking a mortgage from the purchaser or guarantor and not a party to the suit in which the vendor obtained a decree for specific performance, with execution and sale, could not be presumed to have notice thereof.

7. In such case the purchaser or guarantor, by her silence and acquiescence in a decree for specific performance of the guaranty, or agreement to purchase, and in the order for execution and sale of her property, waived all objections to the proceedings on the execution issued against her, but no waiver or acquiescence could be imputed to complainant herein who held a mortgage on the property in dispute, which she had received from the purchaser or guarantor and placed on record several years before the decree and execution sale.

8. In such case, where the mortgage was without legal consideration, was given subsequent to the making of the contract of guaranty or purchase when such contract was about to become due and the guarantor or purchaser had been called upon to perform the same, with actual intent on the part of the guarantor or purchaser to delay, &c., the vendor, or to hinder him in enforcing the contract of guaranty or purchase, the mortgagee, however, being innocent, the mortgaged premises would be sold to satisfy first the deficiency due to the vendor after crediting upon his decree what he had realized from the mortgage from the corporation which was the subject-matter of the contract of guaranty or purchase, and next the amount of the complainant's mortgage.

: 9. The theory of a vendor's suit for specific performance of a contract for the sale of either real or personal property, requires that the vendor may enforce payment to him of the agreed price only upon his being ready and able to convey the property to the vendee in order that the entire contract on both sides may be performed under the direction of the court, and that therefore when the vendor treats the subject-matter of the contract as still his own property, and sells or otherwise realizes the value thereof, he has thereby destroyed his power to perform on his part and he no longer has the right to compel performance on the part of the vendee, and all that he is entitled to when he has created such a situation is a decree in his equity suit or a judgment in a law suit for the residue of the agreed price which he failed to obtain by sale of the property itself, the amount of such decree or judgment in fact being his damages.

10. Case of *Law* v. *Smith, 68 N. J. Eq. 81,* examined and decree therein and proceedings upon the same criticised.

On final hearing on bill, answer and cross-bill of defendant Alfred W. Law, executor, and proofs taken in open court.

*Mr. Alan H. Strong,* for the complainant.

*Mr. Charles L. Carrick,* for the defendant Alfred W. Law, executor.

STEVENSON, V. C.

The bill is filed in the usual form to foreclose a mortgage for $7,500 on a farm of fifty acres or more in the county of Middlesex, made by the defendants Catherine J. Smith and William E. Smith, her husband, to the complainant, Elizabeth H. Smith, who is a sister of the husband. The mortgage is dated June 26th, 1899, was acknowledged November 15th, 1899, and was recorded November 24th, 1899.

Alfred W. Law, as executor, is made defendant because over three years after the complainant's mortgage was executed and recorded, he brought suit and obtained a final decree in this court against the mortgagor, Catherine J. Smith, for the sum of $5,882.53 and costs, in pursuance of which decree an execution was issued under which the sheriff sold the mortgaged premises to the said defendant Alfred W. Law, executor, for $100. The bill claims that any interest that Law so acquired is subject to the encumbrance of the complainant's mortgage.

The defendants, the mortgagors, Catherine J. Smith and husband, suffered a decree *pro confesso* to be entered against them, and, as witnesses on the trial, have shown their desire to aid the complainant.

The defendant Alfred W. Law, as executor, filed an answer by way of cross-bill, in which he alleges that the complainant's mortgage was made with intent to defraud the mortgagors' creditors, and particularly his testatrix, Alice M. Law, his deceased wife, and the evidence makes out a strong case in his favor

on this point—in favor of the view that the mortgage, so far as a legal consideration moving to Mrs. Catherine J. Smith, the owner and mortgagor, was concerned, was a voluntary convey-ance and tainted with an actual purpose on the part of the mort-gagors to defraud Mrs. Law. The cross-bill prays that the mort-gage may be decreed void as to Mr. Law, the owner of the farm under the sheriff's deed, and be surrendered for cancellation.

The cross-bill sets forth the nature of the suit in which Mr. Law obtained the decree against Mrs. Catherine J. Smith for $5,882.53 above mentioned, and the case under the name of *Law* v. *Smith* is reported in the court of chancery in *68 N. J. Eq. 81*, and is not further reported because no appeal was taken. For present purposes, it is enough to say that the suit was in form a suit for the specific performance of a contract made by Catherine J. Smith with Alice M. Law, the defendant Alfred W. Law's tes-tatrix. This contract is printed at length on page 82 of the above-mentioned report. In brief, Mrs. Smith agreed with Mrs. Law that in consideration of Mrs. Law's loaning a New York corporation, in which Mrs. Smith and her husband were inter-ested, $5,000 upon a mortgage which the corporation proposed to give to Mrs. Law, she, Mrs. Smith, at the maturity of the mortgage, on November 18th, 1899, and on notice, &c., from Mrs. Law, would purchase the mortgage. The contract ends with the following statement:

"For the purpose of inducing her (Mrs. Law) to loan said money and take this guarantee, I hereby state that I am worth ten thousand dollars ($10,000) at the present time, consisting of real estate in the county of Middlesex, State of New Jersey."

The proofs show that this statement in regard to Mrs. Smith's real estate referred to the mortgaged premises, the farm above mentioned, and that Mrs. Smith had no other property. The complainant's mortgage for $7,500 was dated back nearly five months, and was acknowledged three days before the mortgage of the New York corporation fell due, and a few days after Mrs. Law had given notice that she desired Mrs. Catherine J. Smith to purchase the New York mortgage, *i. e.*, pay the $5,000 and interest.

It will be observed that the price which Mrs. Smith agreed to pay for the mortgage is not mentioned in the contract, but is left to implication, and that the use of the word "guarantee," in connection with the technical imperfections of the instrument, suggest that the actual intention in the minds of the parties was that Mrs. Smith was to guarantee the collection of the mortgage to Mrs. Law when the same fell due. If the mortgage was paid, of course, Mrs. Smith would not be notified in any way to come forward and take up the mortgage.

The complainant, Mr. Law, conducted his litigation strictly as a suit for the specific performance of a contract, and the case was so treated by the distinguished and learned equity judge before whom the same was conducted, the late Vice-Chancellor Pitney, who accepted the analysis of the case which counsel for the complainant had made, and rejected the view that the complainant's remedy was at law in an action for the breach of a contract of guaranty or otherwise.

The elaborate and interesting opinion of Vice-Chancellor Pitney, in this case of *Law* v. *Smith,* while bringing out distinctly and sustaining the view that the cause was properly in equity, involving the exercise of the jurisdiction of the court of chancery of New Jersey to specifically enforce contracts, indicates that the vice-chancellor's mind did not deal with the exact form of decree or the possible conditions under which the collection of the money awarded to Mr. Law, as executor, should be made. The vice-chancellor covers this whole subject by the following brief propositions at the conclusion of his opinion:

"I will, therefore, advise a decree that the defendant repay to the complainant the amount due on the mortgage, with costs, and that the complainant have execution therefor according to the practice of the court, and that upon payment of the amount so decreed the complainant shall assign the mortgage in question * * * to the defendant.

"If the defendant shall so desire, I will listen to a motion to stay the execution while proceedings may be had to enforce all the mortgages, both the real estate and chattel, in the ordinary way in the court of New York, and credit the amount received therefrom upon the decree.

"The precise terms of the decree may be settled by me upon notice."

It does not appear that there was any settlement of the decree or any further consideration of its form by the vice-chancellor. At any rate, the decree is brief, reciting that the complainant entered into the contract set forth in the bill "and that the complainant is entitled to have said contract specifically enforced in accordance with the prayer of the bill," and thereupon adjudges "that the defendant do forthwith pay to the complainant or his solicitors the sum of $5,882.53, being the principal due upon the mortgage" of the New York corporation to Alice M. Law, deceased, together with interest and costs, and "that upon the payment of the amount herein adjudged to be due, the complainant shall forthwith assign to the defendant the said mortgage mentioned in the contract set forth in the complainant's bill of complaint, and also the chattel mortgage held by the complainant as additional security for said mortgage debt; and that the complainant have execution for the amount herein adjudged to be due to him according to the practice of this court."

It will be observed that this decree contemplates that the complainant upon receipt of the money awarded to him, whether by payment made by the defendant Mrs. Smith or through the proceeds of the execution or executions to be issued, was to stand able and ready to transfer the New York mortgages to the defendant Mrs. Smith. An execution in the ordinary general form was issued upon this decree to the sheriff of Middlesex county, who levied upon the farm of Mrs. Catherine J. Smith, the mortgaged premises, and subsequently struck off and conveyed the same to Mr. Law, as executor, for the sum of $100.

It will be well at this point to see distinctly what the situation of this property was with respect to the parties now before the court. Mr. Law, as executor, and Mrs. Catherine J. Smith were the only parties to this suit for specific performance in which Law obtained his decree. When the decree was obtained against Mrs. Catherine J. Smith her land, which was levied upon, was subject to the present complainant's mortgage for $7,500, which was an absolutely valid enforceable mortgage in favor of this complainant, Elizabeth H. Smith, as against the mortgagor, her

sister-in-law, Mrs. Catherine J. Smith. Counsel in the argument seem to acquiesce in the statement that there was also upon this farm a prior mortgage of $2,500, but I do not understand that there is any proof of that fact. It is quite sufficient, for present purposes, to point out the very great difference between Mrs. Catherine J. Smith's interest in this farm, levied upon under this decree of so-called specific performance, on the one hand, and the interest of the present complainant, Elizabeth H. Smith, holding her mortgage of $7,500, on the other. It was one thing for Mrs. Catherine J. Smith, after the decree for $5,882.53 had gone against her, to abandon all her equitable remedies against a harsh situation on account of her slender interest in the property which might be sacrificed, and a very different thing for her sister-in-law, Elizabeth H. Smith, to disregard those equitable remedies with the very life of her $7,500 mortgage directly involved.

In fact, it appears that Mrs. Catherine J. Smith made no application to the court of chancery to have the execution which had been levied upon her farm stayed by that court, although the positive statement which the vice-chancellor made, that he would entertain a motion for such stay, under the circumstances, not only invited the application but seemed to convey the intimation that it would be received with favor.

What is in mind, through the present part of this discussion, is the distinction after the decree between any waiver of equitable rights and remedies which Mrs. Catherine J. Smith must be deemed to have made, or any acquiescence in a harsh course of procedure which a court of equity stood ready to mitigate in her interest and on her behalf, and any similar waiver or acquiescence which could possibly be attributed to this complainant, Elizabeth H. Smith, whose mortgage, covering the whole or at least the greater part of the value of the mortgaged property, had been on record for several years.

It will throw light on the matters under discussion to consider briefly the methods open in New Jersey since the adoption of the constitution of 1844, for the enforcement of a decree in favor of a vendor of lands or chattels for the specific performance of the contract of sale.

Anciently, such decree was generally enforced by proceedings in contempt, resulting in the incarceration of the contumacious vendee until he obeyed the mandate of the court by paying the price upon tender to him of a proper conveyance. This remedy appears to be at the present day seldom available to the complainant vendor under the constitutional provision abolishing imprisonment "for debt in any action or on any judgment founded upon contract, unless in cases of fraud." *Aspinwall* v. *Aspinwall, 53 N. J. Eq. 684; Walton* v. *Walton, 54 N. J. Eq. 607; Grand Lodge Knights of Pythias* v. *Jansen, 62 N. J. Eq. 737; Adams* v. *Adams, 80 N. J. Eq. 175.*

This question, in a vendor's suit for specific performance, came up before me directly about two years ago in the case (not reported) of *Max Abrash* v. *Louis J. Kurlantzick.* In that case the defendant, the vendee, disobeyed the decree by failing to attend at the master's office at the designated time for the delivery of the deed and the payment of the money. My ruling was that contempt proceedings could not be sustained unless a "case of fraud" could be exhibited which might consist of fraud on the part of the vendee defendant in disposing of his property in order to delay, hinder or defraud the vendor. Subsequently, upon a petition exhibiting a fraudulent disposition of property by the vendee in anticipation of the adverse decree, I advised an order in contempt proceedings under which the vendee was lodged in jail.

The proceedings now available to a successful complainant in a vendor's suit for specific performance by which his decree can be enforced, are expressly provided by section 46 of the Chancery act (*1 Comp. Stat. p. 427*), which embraces substantially the provisions of section 48 of Mr. Paterson's Chancery act of 1799 (*Pat. L. p. 433*), viz., process of sequestration against the real and personal estate of the defendant, the writ of *fieri facias* against goods and lands, and a *capias ad satisfaciendum* against the body of the defendant if the case be infected with fraud. I do not pause to consider whether any case can arise in which the vendor's decree can be completely enforced by an injunction which is one of the methods of enforcing decrees enumerated in

Mr. Paterson's law. If applicable to the facts and conditions, an injunction, of course, can be employed.

Under the original English practice, if the vendee disobeyed the mandate of the decree against him for specific performance, the decree might be enforced by contempt proceedings, or the contract might be declared rescinded, or the complainant, if unwilling to rescind, "might obtain a declaration that he has a lien on the property for unpaid purchase-money and costs, and an order for the sale of the property for the purpose of paying them." *2 Dan. Ch. Pr. *1220 note 9,* with cases cited.

The method of enforcement by contempt proceedings, as we have seen, is of very limited application in New Jersey under our constitution, and the rescission of the contract certainly cannot often be advantageous to the vendor, the injured party. The establishment of a lien upon the property sold for the amount of the price, and the sale of the property for the satisfaction of such lien all in one suit, it seems to me in very many cases would accomplish exact justice by liquidating the damages of the vendor if the proceeds of the sale did not yield him the purchase price, with interest and costs of suit, and by giving the vendee any surplus as the value of his interest under the contract as equitable owner.

There seems to be no reason why the court of chancery of New Jersey should not adopt, if it has not already adopted, this last-mentioned method of procedure in any appropriate case. The inference, I think, may be drawn that Vice-Chancellor Pitney had substantially this method of procedure in contemplation when he invited the motion to stay the execution, which would be issued under his decree until the value of the subject-matter of the sale, the New York mortgage, had been realized by proceedings in the State of New York.

I can discover no trace of' any practice in England or this country which warrants the enforcement of the vendor's right to specific performance by a decree of a court of equity, an absolute decree for the price, with execution in the usual general form, while the vendor is allowed to remain the owner of the property which he agreed to sell and is clothed with power to dispose of the same as he may see fit. The slightest reflection will show

how far from the whole theory of specific performance such a
procedure must necessarily go.  The theory of the vendor's suit
for specific performance is that the court will compel the carrying
out of the contract on both sides, usually under the direction of a
master.  It is only on tender of a conveyance of the property at
the time designated that the vendee is obliged to pay over the
price.   Undoubtedly, although Vice-Chancellor Pitney's mind
was not brought to the study of this subject, with his usual
quickness of perception, he saw that there was an equity to be
cared for in framing the decree so as to protect the defendant in
the suit, Mrs. Catherine J. Smith.  That he did not mean to give
the vendor, Mr. Law, what amounted in fact to an absolute de-
cree, for the price of the thing sold and execution for the same,
while Mr. Law, the vendor, retained the thing which he had sold,
or agreed to sell, I think appears from a careful consideration
of the decree itself, and the opinion in pursuance of which it was
made.

The decree, like all decrees for specific performance, contem-
plated performance on both sides, not one side only, and the
execution was to issue in order to enforce the decree.  The com-
plainant's bill set forth the tender of an assignment of the New
York mortgage and prayed that the defendant Catherine J.
Smith might "be decreed to specifically perform said contract of
guaranty and pay" the amount of money due to the complainant,
Mr. Law.  The matter of the adjustment of conditions protective
of the equities of the defendant Mrs. Catherine J. Smith is
plainly left open by the vice-chancellor for future consideration
upon the application for the stay of execution which no doubt he
thought would be made.  We have seen that this application was
not made because the party interested, as it now turns out, this
present complainant, Miss Elizabeth H. Smith, with an interest
probably covering the whole value of the farm in question, was
not a party to the so-called suit for specific performance, knew
nothing of the proceedings taken in that suit, while Mrs. Cathe-
rine J. Smith, whom the vice-chancellor no doubt regarded as the
party who would avail herself of the motion which he said he
would hear, had in fact little or no interest in the land on which
Mr. Law's execution was levied.

That the vice-chancellor did not intend that his decree should be used as it was as an absolute decree for money with execution for the unconditioned collection thereof out of any lands or goods of the defendant, which might be levied upon by the sheriff, is also quite apparent from the remarks which he makes in the early part of his opinion (*p. 48*). Referring to a remedy at law open to a vendor to recover the whole purchase-money based on a contract and a tender of a conveyance as an obsolete proceeding at law, he says:

"The difficulties in the way of using it (the action at law) are manifest. The vendor, plaintiff at law, ought not to be compelled to part with his title until he has received the purchase price. If he obtain a judgment for the whole price, he ought not to be permitted to collect the money from the defendant by execution thereon until the title is vested in the other. Here comes in the convenience, if not the necessity, for the machinery of this court. The parties meet in a master's office and the decree is performed under his supervision."

Precisely what Vice-Chancellor Pitney points out as the injustice to the vendee in the action at law which he says, "has long since been abandoned," was actually done in this case. Not the slightest distinction can be shown between the way in which this money decree in the court of chancery was enforced, and the way in which a judgment at law for the whole price in favor of the vendor would be enforced by execution while the vendor remains the owner of the goods or lands with full power of disposing of them.

Exactly what remedy at law "long since abandoned" for the specific performance of a contract to convey real estate in favor of a vendor, was referred to by Vice-Chancellor Pitney, is not quite clear. A covenant to convey land anciently in England could be specifically enforced by a special writ to the sheriff. *Fry Spec. Perf. 8 § 27.* The extent of this obsolete remedy we need not investigate. In Pennsylvania, where the development of equity jurisprudence has been meagre and chancery courts disfavored, the law courts have been impelled in some instances to extend their machinery and methods of procedure so as to pro-

vide the benefits of equitable suits for certain classes of cases. Quite a complete system has been developed of enforcing specifically contracts to convey real estate and even personal property by actions at law for the agreed price accompanied by tender of the deed in court and by actions of ejectment. In a vendor's suit judgment is recovered for the entire price, but the right of the vendee to a conveyance, I think, is cared for. In New Jersey, so far as I am aware, with the more convenient machinery of a court of equity available, for the specific performance of contracts for the sale of real and personal property, if the vendor elects to sue at law, he recovers not the price but the amount of his damages.

It is not necessary for me to point out exactly what should have been done, and no doubt would have been done under the direction of Vice-Chancellor Pitney, if Mrs. Catherine J. Smith had been the absolute owner of this valuable farm free and clear of all encumbrances and had made the application which Vice-Chancellor Pitney says he would hear. These powers of the court of chancery to enforce its decrees by process of sequestration, by *fi. fa.,* by *ca. sa.* and injunction, are enumerated in our statute, and there is no difficulty in adapting their use to the requirements of every particular case. If the equities of all parties, including those of this present complainant, had been thrashed out before the vice-chancellor, no one can doubt that he would have found a way to do exact justice and prevent the injustice which in fact followed. The arrangment might have been prescribed by an injunction or a receivership for the preservation of the New York mortgages, or their proceeds, while the vendor, Law, was enforcing the collection of the price which the contract gave him by execution or sequestration against the property of Mrs. Catherine J. Smith. The property would have been an available fund which Mrs. Smith might have used to effect the rescue of her farm. The vice-chancellor even goes so far as to indicate that he might impose upon Mr. Law conditions which would require him to exhaust his remedy against the New York properties before he would be allowed to bring the farm of the defendant Mrs. Catherine J. Smith to sale under his execution upon his decree in this court.

Now, let us see what was done with this so-called decree of specific performance in favor of Mr. Law, this vendor. Contrary to the whole theory of actions for specific performance of contracts under the settled practice in this state and in England, the successful complainant, Mr. Law, had a general execution for the whole price while he remained in full control of the subject-matter of the contract which was supposed to be specifically enforced by the decree. Such a proceeding seems to amount to the specific performance of the vendee's obligation to purchase, while the vendor is discharged from his obligation to convey.

The result was this: The mortgaged premises worth probably somewhere between $6,000 and $10,000—Mrs. Catherine J. Smith represented that they were worth $10,000—at sheriff's sale under this decree for over $5,000, was sold to Mr. Law, the holder of the decree, for the nominal sum of $100. There is no evidence that this present complainant, Miss Elizabeth H. Smith, had any notice of this sale. She cannot be presumed to have notice; she was not a party to the suit in which the execution was issued under which the sale was held. She testifies that she never heard of Mr. Law. Shortly after the sale, Mr. Law obtained possession of the farm by a writ of assistance, and thereupon promptly Miss Elizabeth H. Smith filed this bill to foreclose her mortgage, making Mr. Law a defendant on account of his judgment and sheriff's deed. Mr. Law then filed his answer and cross-bill, in which he claims that the mortgage of the complainant was made with intent to hinder, delay and defraud creditors, and particularly his testatrix, and that the same is therefore null and void as to him, and he prays that the same may be surrendered for cancellation. With this mortgage of $7,500, a valid and undisputed encumbrance as between the mortgagor, Catherine J. Smith, and this complainant, and possibly a prior mortgage of $2,500 on the land, and a decree for over $5,000 levied upon it, it is evident that, so far as the public were concerned, there was little chance that Mr. Law would fail to buy in the land at a nominal price, and this it appears he did.

Let us consider what the effect would have been if Law had not collected the New York mortgages. What would have been his position if he had bought in this farm for $100, then filed his

bill against Elizabeth H. Smith, praying to have her mortgage declared void? It would seem that Miss Smith would have had a right to have her equities cared for, precisely as Mrs. Catherine J. Smith would have had in the suit for specific performance if she had acted upon Vice-Chancellor Pitney's invitation. In other words, Miss Smith when thus attacked by Mr. Law could have replied: "I will concede that this mortgage was void as to you on account of the fraudulent intent of the mortgagors in which I did not participate. I admit that the mortgage was voluntary. But all you had a right to as against me when you recovered your decree was the payment of the decree, to be effected in an equitable manner under the control of the court of chancery. Admitting that I stand in the shoes of Catherine J. Smith, she had these equitable rights which the court stood ready to guard. But, in fact, these equities belonged to me, because I had a conveyance of the land in question from Catherine J. Smith, covering practically its value. I, the real party in interest, therefore had no chance to get the protection which the court stood ready to afford, and the decree was distorted from the proper form of a decree of specific performance and converted into an absolute money decree with execution. I was not a party to the suit, and I am not bound in any way, and therefore I ask now in this case to have those equities which really belonged to me but which the court supposed belonged to Mrs. Catherine J. Smith, recognized and enforced." What would the court have done in such case? Is it not plain that the court would have had just the same control which it had and would have exercised upon the application of Mrs. Catherine J. Smith when the decree was entered in the specific performance case? The court could have said to Mr. Law: "You will be protected. Bring forward the New York property and subject it to the control of the court. Miss Smith's mortgage is void as to you, but it is valid as to the mortgagor. Miss Smith would not have allowed you to buy her $7,500 worth of property for $100 and wipe her out if she had had notice. She might have arranged with the use of the New York property or otherwise to pay off your claim and the court would have controlled the whole situation, perhaps requiring the realization of the value of the New York property first in accord-

ance with the intimation made in Vice-Chancellor Pitney's opinion. Your execution was issued to enforce payment by the vendee of the price named in the contract, while you stood able and ready to convey to the vendee the thing which you sold or agreed to sell. Your decree and execution were only proceedings to obtain specific performance of the contract on both sides, and were predicated upon the continued right of the vendee to have the property whenever you received the price."

It cannot be made too emphatic that while Mrs. Catherine J. Smith, by her silence and acquiescence, may be deemed to have waived all possible objection to the proceedings taken under the execution which was issued against her, no waiver or acquiescence of any kind can be imputed to this complainant who held the mortgage for $7,500 covering the property in dispute. Assuming that the complainant, as the holder of this mortgage, stands exactly in the shoes of the mortgagor, Mrs. Catherine J. Smith, in respect of the claim of Mr. Law for the satisfaction of his debt, there is no principle of law or equity which can make the subsequent waiver of equities on the part of Catherine J. Smith bind this complainant who had received and recorded her mortgage several years before.

The cross-complainant, Mr. Law, however, is not in the position above referred to and in part considered. He appears to have been in substantially that position when this present suit was brought, and when the original pleadings on both sides were filed. The complainant in her amended answer to the cross-bill sets up by way of supplemental answer that after this suit was commenced Mr. Law foreclosed the New York mortgages, or the one of value covering real estate, and on May 9th, 1906, the lands were sold in the foreclosure proceedings to Mr. Law himself as executor for the sum of $6,300. These facts are not disputed— are practically admitted. A statement of the referee who conducted the New York foreclosure sale was put in evidence by consent, showing that the decree, with costs, &c., aggregated $6,621.56, and that the "amount received at sale" was $6,300, leaving a deficiency of $321.56, on which deficiency interest runs from May 8th, 1908. Although the amended answer alleges that

the purchaser of the New York properties at this foreclosure sale was the defendant Law, as executor, I do not think that any evidence was offered in regard to this matter, but, as against the complainant, it may be deemed that Mr. Law was the purchaser. Notwithstanding the statement of the referee that he "received" at the sale $6,300, it is proper to infer that Mr. Law merely "bid on his decree," and that the property was struck off to him in satisfaction of $6,300 of that decree.

Let us now consider again the situation of the parties with reference to these properties after Mr. Law, without as yet obtaining specific performance by the vendee, had voluntarily stripped himself of all power to perform on his part as vendor. Mr. Law has acquired these New York mortgaged lands at a competitive judicial sale, ât which sort of sale, as a rule, full value is not obtained, against some bidder or bidders who were offering to pay presumably very near $6,300. Mr. Law also stands the owner of this Middlesex farm on which the complainant holds her mortgage for $7,500, and he claims that this mortgage is void as to him. Mr. Law also still holds his decree against Catherine J. Smith for the entire amount thereof over $5,000 and interest for some years, less only the $100, for which he bid in the Middlesex county farm. If it could benefit Mrs. Catherine J. Smith to be relieved of the greater part of this decree for $5,000, and interest for years, which stands against her for the full amount, less only the $100, for which Mr. Law bid in the Middlesex farm, she might, if she has not lost all her rights by waiver and laches, apply to this court to have the amount realized by Mr. Law out of the New York properties credited upon this decree, a proceeding which would not in the slightest degree benefit this complainant, Miss Elizabeth H. Smith.

If Mr. Law is successful in setting aside the complainant's mortgage on the theory that it was a voluntary conveyance, made with actual intent on the part of the mortgagors to defraud creditors, he will have received for $5,000, which his testatrix originally invested, and the interest thereon, the farm in Middlesex county, New Jersey, worth $6,000, or $8,000, and the lands in New York worth $6,300.

In my opinion this court, in the case of *Law* v. *Smith,* did not intend, and in no vendor's suit for specific performance will intend, to give the vendor absolute execution, in fact, in some cases a series of executions, for the collection of the price named in the contract generally out of the property of the vendee without controlling the property which was the subject-matter of the sale agreed upon, so as to make specific performance possible. The whole theory of specific performance is violated by permitting such a course of procedure. It follows, I think, that Mr. Law had no right while he held his money decree, practically the same thing as a judgment at law for the price, to dispose of the property which he was bound to be able and ready to convey to the vendee before a dollar of the price would be payable. When, therefore, Mr. Law disposed of this New York property, the subject-matter of his contract with Mrs. Catherine J. Smith, he plainly violated the equitable rights of this complainant, Elizabeth H. Smith, in respect of the enforcement of his decree of specific performance by execution, which rights she had not waived.

I think the conclusion must be reached in this case that when Mr. Law foreclosed and collected the New York mortgage and appropriated the proceeds, he waived the benefit of his decree for specific performance. He practically waived the benefit of his decree for specific performance by stripping himself voluntarily of the power to perform the decree on his part, and thereby relegated himself to the position which he occupied before his suit for specific performance was commenced. It may be conceded that he is entitled to hold the farm which he bought in under his execution issued for the enforcement of his decree, on the part of Mrs. Catherine J. Smith, as a security for the balance remaining due on his decree. It must be borne in mind that the contract on the part of Mrs. Catherine J. Smith had not been specifically performed. There was no specific performance at any time on either part. The whole proceeding was *in fieri,* even after Mr. Law's decree had been entered, after his execution had been issued and after that execution had been returned satisfied to the extent of $100, and the farm had been conveyed to him, Mr. Law. The situation remained the same in this court.

Mr. Law was still seeking to enforce his contract, and had a right to other executions, and when the total amount of the price was realized and paid to Mr. Law, he was under an obligation to assign and convey this New York property, these New York mortgages, to Mrs. Catherine J. Smith. As was pointed out above in this very decree which Vice-Chancellor Pitney advised, and which I think was diverted from its legitimate object, the obligation—the continued obligation—of Mr. Law to transfer this New York mortgage in accordance with his contract to Mrs. Catherine J. Smith, when he procured from her the specific performance of her obligation, by execution or otherwise, to pay the price which she agreed to pay, is distinctly recognized.

The act of Mr. Law in disposing of the New York mortgage and appropriating the proceeds whereby he voluntarily disabled himself from performing the condition upon which alone he was entitled to receive the price from Mrs. Smith, in my opinion, effected the surrender and renunciation on his part of the decree for specific performance, and all proceedings had therein, including the issuing of the execution, the sheriff's sale and the conveyance by the sheriff to him of the Middlesex farm. Can it be seriously argued that if Mr. Law had proceeded, as he had a perfect right to do, first to realize the value of the New York mortgages, and had received in that way $6,300, that he then could have maintained an action in a court of equity for the specific performance of the contract which he had rendered himself incapable of performing on his part?

Suppose Mr. Law, after he had filed his bill for specific performance in this court, had gone over to New York and enforced the mortgages for his own benefit, and had realized $6,300 from such a proceeding, would not that have immediately been pleadable as an abatement and abandonment of his New Jersey suit? Is it not perfectly plain what Mr. Law's remedy would have been to recover for any moneys remaining due to him? Mr. Law notified Mrs. Catherine J. Smith promptly that he would hold her liable upon her contract. Mrs. Smith made default. Mr. Law was not obliged to wait on her any further. He might at once have realized upon his New York security and then brought an action, and it would have been an action at law in this state

or elsewhere against Mrs. Catherine J. Smith, and he would have recovered his damages, which would be the difference between what he ought to have received under Mrs. Catherine J. Smith's contract and what he did receive through sale of the New York properties. If the New York property had brought enough money to pay Mr. Law's entire claim, can it be pretended that he would have had any action at law or in equity for any further recovery?

A passing reference here may be made to the statement of Vice-Chancellor Pitney (*p. 85*) that he is "by no means sure that the enforcement of the mortgage would not be a waiver of all rights against the defendant under the contract." Of course, the enforcement of the mortgage would prevent Mr. Law from performing the contract to sell the mortgage, and would be a waiver of any possible right of action in equity for specific performance against Mrs. Catherine J. Smith. But the enforcement of the mortgage could not possibly affect Mr. Law's right to an action for damages against Mrs. Catherine J. Smith if the amount which he realized from the mortgage was less than the amount which Mrs. Smith agreed to pay.

At this point we might go into the mass of English and American decisions which present a great deal of confusion and conflict in regard to the nature and theory of the remedies at law open to a vendor of chattels where the vendee has declined to accept the goods and the title to them has not passed. Such an examination, however, would not, in my judgment, throw much light upon this present case which presents an instance where the subject-matter of the contract of sale or conveyance was a bond and mortgage, a chose in action to be collected in a foreign state, property practically without market value and presumably to be converted advantageously into money only by collection in the foreign state through legal proceedings or otherwise. In the absence of a precedent absolutely controlling my decision, I shall hold that in such a case the vendor, having tendered full performance of the contract on his part, and the vendee having made default, has a right in the exercise of due care and diligence to collect the amount of the mortgage, and, if the amount collected does not equal the price which the vendee agreed to pay, the dif-

ference is the amount of damages, now liquidated, which the vendor may recover from the vendee on his contract to accept and pay for the mortgage. Whether notice of the proceedings to collect should be given by the vendor to the vendee I do not stop to consider.

In the consideration of this case I have assumed, without so deciding, that counsel for Mr. Law is correct in regard to a number of matters which have been the subject of extended argument.

It is so assumed that the mortgage was without any legal consideration and was given by the mortgagors with intent to defraud Mrs. Law or hinder her in securing the fruits of her contract with Mrs. Smith.

Also that the complainant, Miss Smith, the mortgagee, stands in the same position as to Mr. Law's decree as that which Mrs. Catherine J. Smith would have occupied if she had not made the mortgage.

Also that there is no defect in the docketing of the decree which could affect the sheriff's deed to Mr. Law so as to impair Mr. Law's right under such deed to set aside a prior voluntary conveyance.

There are two points of advantage as to the proceedings subsequent to the decree in Miss Smith's position before this court, over that which Mrs. Catherine J. Smith would be allowed to occupy. These are that there is no proof of any actual participation in the assumed fraudulent purpose of the mortgagor on the part of the mortgagee, Miss Smith, and there was what might be described as a moral obligation resting upon Mrs. Catherine J. Smith, and particularly her husband, to secure to Miss Smith for her own benefit and the benefit of her aged mother a large part, if not all, of the $7,500 represented by the mortgage. While the proof of any debt from Mrs. Catherine J. Smith to the complainant, Miss Smith, at the time the mortgage was made may be deemed unsatisfactory, and I have assumed that no such debt existed, there can be no doubt that Mrs. Catherine J. Smith's husband had used the moneys of his mother and his sister in the business which he carried on in New York and which he transferred to his wife. Apart from the intention and effect of this

mortgage to defeat a legal creditor, present or contemplated, of Mrs. Catherine J. Smith, this mortgage for $7,500 stands as a commendable disposition of property for the protection of two women who were unable to protect themselves.

While the cross-bill of Mr. Law prays that the complainant's mortgage for $7,500 may be decreed to be without consideration and void, and may be delivered up to be canceled, counsel for Mr. Law, in his brief, states that Mr. Law "takes no harsh position" and that

"he will gladly give up the portion of the property taken in the New York foreclosure which he has been unable to dispose of * * * account for the property which he has disposed of at a sacrifice, and relinquish all claim upon the property here in suit, if the defendants among them will pay the amount of the decree with interest and costs, and reimburse him for the legal expenses to which he has been put by reason of the various litigations."

It is alleged in this brief that Mr. Smith bid up the property at the foreclosure sale in New York, but there is not a particle of evidence offered on this subject. Mr. Law was in no position of hardship. He was in the same position at the New York sale as that which is occupied in thousands of instances from day to day, and year to year, in New Jersey, by the holders of judgments and decrees who, at the sale of their security, must exercise sound judgment and determine how far to bid up the property, and how far to rely upon the remaining personal or other security for the recovery of any deficiency. Mr. Law, presumably, paid $6,300 of his own decree by taking the property which he is presumed to have thought was the fair equivalent of that sum, and possibly he thought he was getting a great bargain. If he was disappointed and saw fit to dispose of some portion of this New York property at a sacrifice, it does not follow that he should be allowed to withdraw from the situation in which he voluntarily placed himself for his own benefit, and cast the property, and the burden of effecting a sale thereof, upon Mrs. Catherine J. Smith or this complainant. Who can tell that the bidders who stood ready to take this property at the former sale, or any bidders, will now come forward if a resale should be attempted? Suppose the New York property had gone up in value and was

now salable at $15,000, would Mr. Law come forward and offer to surrender what he had bought for the benefit of Mrs. Catherine J. Smith or this complainant? Or could this court in any way compel him to make such surrender in this suit?

It is sufficient for the purpose of disposing of the offer or suggestion made in the brief of Mr. Law's counsel to note that there is no evidence that Mr. Law now controls or is able to bring forward the proceeds of the New York foreclosure. A mere change in the form of the subject-matter of the contract might not, under some circumstances, affect the situation in a case like this. The only evidence, however, that Mr. Law ever obtained the mortgaged land instead of the $6,300 in cash, which he appears to have received, consists in the allegation of the answer to the cross-bill that the lands "were purchased" by Mr. Law for $6,300. This, as heretofore stated, is evidence against the complainant, Miss Elizabeth H. Smith. There is no evidence that Mr. Law now owns 'or controls any of this land. No tender of the control of these lands is made in Mr. Law's cross-bill or in his evidence. We have the bare statement of counsel for Mr. Law, made in a brief, to the effect that Mr. Law has only a "portion of the property * * * which he has been unable to sell" and that the remainder of the property he has "disposed of at a sacrifice" with respect to which he suggests that he may render an account.

Mr. Law has been heretofore considered as having deprived himself of the power to convey the New York mortgage, or the property covered by it, which power he was bound to be ready to exercise as the continuing condition precedent to his right to receive the money which Mrs. Catherine J. Smith agreed to pay and which the decree of specific performance awarded to him. If Mr. Law can now produce the mortgage, or the property which it covered, and his New York foreclosure decree, that fact should have been alleged and proved. That fact has not been proved and the statements of Mr. Law's counsel in his brief show that Mr. Law is unable to produce one portion of the property; and there is no evidence that he can produce any of it. In brief, there is no basis of fact for the sort of decree suggested on behalf

of Mr. Law if all the other doubts as to the justice of allowing Mr. Law to rescind his purchase should be solved in his favor.

A decree will be advised directing the sale of the mortgaged premises for the satisfaction, in the first place, of the deficiency above stated due to Mr. Law, and, in the second place, of the amount of the complainant's mortgage. The disposition of any possible surplus, and any other matter which has not received the attention of counsel or the court, may be determined upon the settlement of the decree.