RICHARDSON-KELLETT COMPANY, A CORPORATION, *Appellant,* v. O. B. KLINE, *Appellee.*

## Opinion Filed July 1, 1915.

RESERVATION IN DEED ON BEHALF OF STATE OF RIGHT TO ENTER LAND FOR DRAINAGE PURPOSES—WHEN NOT A BREACH OF COVENANTS OF WARRANTY AGAINST INCUMBRANCES.

A reservation in a deed tendered by individual vendors to an individual vendee in favor of the Board of Trustees of the Internal Improvement Fund of Florida, an agency of the State government, to enter upon the land proposed to be conveyed at any and all times for the purpose of constructing a system of drainage canals thereon, if necessary, would ordinarily be an encumbrance on the title and a breach of a proposed general warranty against encumbrances, but, under the facts and circumstances of this case, it is not such an encumbrance as will give to the vendee any right to complain of its being contained in the deed tendered to him under his contract of purchase. The land in question is a part of that vast body of swamp and overflowed lands popularly known as the "Everglades," that was granted by the United States Congress to the State of Florida for the express purpose of reclamation by drainage, and that in turn was vested by State legislation in its Board of Trustees of the Internal Improvement Fund, a State governmental agency in trust, charged with the duty also of reclamation and drainage thereof. This State Board at the time of its conveyance of the land in question to the vendors thereof, and for some time prior thereto, was actually engaged in a vast and costly system of drainage at the cost of the State, the purpose being to drain and reclaim the whole or the major part of the vast territory known as the Everglades. This State Board finding it necessary or expedient to sell and dispose of large tracts of these submerged lands in advance of the completion of their system of drainage thereof, very wisely included in their deeds to the purchasers

thereof the same reservation of the right to enter thereon at all times for the sole purpose of effecting the drainage and betterment thereof and adjacent territory at the cost of the State. The proposed reservation in the deed tendered does not undertake to reserve any part of the technical fee in the land, but simply perpetuates in the Board of Trustees of the Internal Improvement Fund the same reservation contained in their deed to the vendors, viz: the bare right to go upon the land for the sole purpose of carrying out the State's scheme of drainage and improving the drainage district in which this land lies; the drainage district having been theretofore specifically identified and named by a Public Act of the Legislature,—Chapter 5709, Laws of 1907. The vendee bought the land in question with full knowledge of its status and of the necessity for the questioned reservation, and, therefore, has no right to complain thereat.

Appeal from Circuit Court, Dade County; H. P. Branning, Judge.

Reversed.

### Statement.

On the 9th day of March, 1915, the appellee filed his bill of complaint in equity against the appellant in the Circuit Court of Dade County, alleging and praying therein as follows: "Your orator respectfully represents unto your Honor that on the 5th day of November, A. D. 1913, the Richardson-Kellett Company, defendant herein, either being or pretending to be seized and possessed in fee simple of the following described real property situate, lying and being in the County of Dade and State of Florida, to-wit: TRACT No. SIXTEEN (16) of Block No. Two (2) in Section Seventeen (17) in Township Fifty-four (54), S. R. Forty (40) East, and more

fully described in a Plat and the literature of the said Richardson-Kellett Company; and the said Richardson-Kellett Company being so seized, on the said 5th day of November, A. D. 1913, entered into a written agreement with one Charles S. Bathgate for the sale of the same, which said agreement was signed by the said Richardson-Kellett Company and accepted by the said Charles S. Bathgate, and by which said written contract the said Richardson-Kellett Company covenanted and agreed for and in their behalf and for their successors and assigns, that for and in consideration of the sum of five hundred dollars ($500.00) to be paid as hereinafter mentioned and according to the terms of a written application, a copy of said written application being herewith attached and made a part of this bill and marked Exhibit 'A' and which said application was then and there accepted by the said Richardson-Kellett Company as shown by a receipt and written contract for the first payment and the terms of payment, a copy of which said receipt and contract is herewith attached and made a part of this bill and marked respectively Exhibit 'B' and wherein the said Richardson-Kellett Company did agree to furnish to the said Charles S. Bathgate a warranty deed for the property herein described upon the payment of the full sum of five hundred dollars ($500) either as set forth in the said application and contract or for cash and did then and there agree and covenant to execute to the said Charles S. Bathgate a warranty deed in fee simple upon the said Charles S. Bathgate or his successors and assigns complying with the said application and contract and the said Charles S. Bathgate did then and there covenant and agree to accept the said terms of said contract and made a payment of

the sum of ten dollars ($10) as the first payment demanded under the conditions of the same; said application and contract being marked as an exhibit to this bill and the originals ready to be produced in court.

And your orator would further represent unto your Honor that on the said 5th day of November A. D. 1913, the said Richardson-Kellett Company did issue and execute under its name and corporate seal a certificate to the effect that the said Charles S. Bathgate had purchased and contracted to purchase, according to the terms of said contract, the said described tract of land, a copy of which certificate is herewith filed as part of this bill and marked Exhibit 'C' and the original ready to be produced in court.

And your orator would further represent unto your Honor that on the second day of February, A. D. 1915, the said Charles S. Bathgate for and in consideration of a good and valuable consideration, did then and there sell, set over and assign to your orator all his right, title and interest in and to the said described application, contract and receipt for first payment and certificate, whereby the said Charles S. Bathgate did then and there sell and convey to this orator all his right, title and interest in and to the said described land, and orator represents unto this honorable court that he is now the holder and owner of the said land contracts for a valuable consideration.

And your orator would further represent unto your Honor that being the owner of said heretofore described contract, he has, through his counsel, this day tendered in legal tender, cash currency of the United States to the said Richardson-Kellett Company the full amount due upon the said contract, to-wit, the sum of $490.00 in cash, and upon such tender being made to the said defendant

corporation, the said defendant corporation has in return for the cash tender of your orator exhibited to your orator and has offered and tendered him to him a warranty deed in due form whereby and by such warranty deed the said defendant corporation has attempted to convey in fee simple the title to the said described land to this orator, but upon an examination of the title to the same and the deed tendered to this orator, this orator is informed and believes that such deed does not convey an absolute indefeasable estate in fee simple because said deed contains the following proviso: 'Saving and reserving unto the said, the Trustees of the Internal Improvement Fund of the State of Florida, and their successors, the right at any time to enter upon the said lands, and make or cause to be made and constructed thereon such canals, cuts, sluice-ways, dikes and other works as may in the judgment of the said Trustees or their successors be necessary and needful for the drainage or reclamation of any of the lands granted to the State of Florida by Act of Congress, dated September 28th, 1850, and to take from the said lands hereby conveyed and to use such gravel, stone or earth as may in the judgment of the said Trustees or their successors be necessary to use in the making and construction of said canals, cuts, sluice-ways and dikes and other works for the purposes aforesaid.'

And your orator would further represent unto your Honor that he has contracted for a deed in fee simple and that such deed so tendered to this orator as aforesaid is not such a deed as this orator contracted with the defendant corporation for, and further represents unto this court that the said defendant corporation did refuse and now does positively refuse to give unto orator a deed con-

veying a clear title in fee simple to the said described land to this orator.

FORASMUCH, therefore, as orator is without remedy in the premises, save in a court of equity, and to the end that the Richardson-Kellett Company, a corporation, defendants herein, may be compelled to answer this bill, but not under oath, the answer under oath being hereby specially waived, and orator prays:

*First.* That the defendant may be by the decree of this honorable court compelled to specifically perform the agreement entered into with this orator and to make a good and sufficient deed of conveyance to this orator, conveying to this orator the said described premises in fee simple and your orator being ready and willing and hereby offering to perform the said agreement on his part and standing ready to pay over all balance due of moneys which he has already tendered to the said defendant and stands ready to pay upon the defendant making out a good and sufficient title to the said premises and executing a proper conveyance thereof to your orator, pursuant to the terms of the said agreement and that by said decree this orator be compelled to pay to the defendant the residue of the said purchase money as in good conscience he should and that said deed of conveyance be made to your orator free and clear of all reservations, such as are contained in the said deed proffered by the said defendant and that your orator may have such other and further relief as equity may require and to your Honor shall seem meet and just.

May it please your Honor to grant unto your orator the State's most gracious writ of subpoena in chancery directed to the Richardson-Kellett Company, a corpora-

tion, defendant herein, commanding it to appear before this honorable court on a day and date and place certain and under a certain penalty to be therein named, then and there to answer this bill and stand to and abide by such decree as this honorable court shall make in the premises, and your orator will ever pray.

SANDERS & NORFLEET,
Solicitors for Complainant.

Application.
EXHIBIT 'A'

November 5th, 1913.
RICHARDSON-KELLETT COMPANY,
Minneapolis, Minnesota. Copy.
Gentlemen:

I hereby make application for the purchase of Tract No. 16, Block No. 2, Section 17, Township 54, Range 40, in your Everglade lands, Dade County, Florida, same being ten acres according to Government survey and Richardson-Kellett Company's plat of same.

Payable ten Dollars ($10.00) cash to agent taking this application, ten dollars ($10.00) every thirty days thereafter until the full amount of FIVE HUNDRED DOLLARS is paid; the terms and conditions of the sale and purchase being subject to the contract on the back hereof, which is hereby made a part of this application.

The signers of this application understand that no agent of the Richardson-Kellett Company has power or authority to bind said Company by any act or statement not set forth in this contract and its general literature.
H. A. Daniels, *Agent.*

*Name* Charles C. Bathgate
*Address* Mandan, North Dakota

*Approved* :

NOTE:—Should applicant desire to pay cash, a reduction of 5 per cent will be given.

### CONTRACT.

*It is hereby mutually agreed* between the Richardson-Kellett. Company and the holder of this contract as follows :

*First.*—That the applicant when he makes his first payment will receive from the Company a certificate showing that when he has made his last payment the Company will issue him a warranty deed for the property described.

*Second.*—If purchaser should be disabled by illness from following his usual vocation and can furnish a physician's certificate satisfactory to the Company payment shall be suspended for a period of sixty (60) days.

*Third.*—All payments must be made by bank draft or money order payable to the Richardson-Kellett Company at Minneapolis, Minnesota. No agent of the company has authority to receipt for any except the first payment of $10.00.

*Fourth.*—The company must be notified in writing in the event of an assignment of this contract before the same will be binding upon them.

*Fifth.*—The unpaid balance of purchase price may be paid in full at any time and a discount of 5% will be deducted.

*Sixth.*—No interest will be charged on deferred payments. All taxes on this property will be paid by the company until the maturity of this contract. Purchaser shall not be charged with any brokerage or commissions.

*Seventh.*—It is understood and agreed that this appli-

cation is taken subject to previous sale of tract described and the Richardson-Kellett Company reserves the right to cancel any application by returning within ten (10) days the amount paid down on same.

*Eighth.*—Any failure on the part of the purchaser to make payments as stipulated in the application forfeits his rights and interest in said contract and monies paid thereon.

*Ninth.*—It is mutually agreed that the purchaser who buys without seeing the property be allowed thirty (30) days from the date of this contract in which to make a personal inspection of the property; and if the purchaser after such inspection is not satisfied with the property, for any reason whatsoever, he or she may then give notice in writing, and the Richardson-Kellett Company shall then refund all payments made by the purchaser; provided however that unless such written notice is received by the Richardson-Kellett Company within thirty (30) days of the date of the acceptance of this contract, the contract shall be binding and in force.

Exhibit 'A'

EXHIBIT 'B'

$10.00        Receipt for first payment.

Copy.        November 5th, 1913.

*This is to certify,* That the application of Charles S. Bathgate, of Mandan, North Dakota, for one ten acre tract of land in Tract 16, Blk. 2, Sec. 17, Twp. 54, Range 40, as described by the plat and literature of the Richardson-Kellett Company, has been executed, and receipt is hereby acknowledged for the first payment of $10.00; and when the above mentioned applicant has completed

his payments as per application he will be entitled to warranty deed.

No interest shall be charged on time payments and the Company pays all taxes payable until purchaser receives his deed.

This receipt is given subject to acceptance or cancellation of the application by the Richardson-Kellett Company as stated in the application.

RICHARDSON-KELLETT COMPANY,
Per H. A. Daniels, Agent.

CONTRACT.

*It is hereby mutually agreed* between the Richardson-Kellett Company and the holder of this contract as follows:

*First.*—That the applicant when he makes his first payment will receive from the company a certificate showing that when he made his last payment the Company will issue him a warranty deed for the property described.

*Second.*—If purchaser should be disabled from illness from following his usual vocation and can furnish a physician's certificate satisfactory to the Company, payment shall be suspended for a period of sixty (60) days.

*Third.*—All payments must be made by bank draft or money order payable to the Richardson-Kellett Company at Minneapolis, Minnesota. No agent of the company has authority to receipt for any except the first payment of $10.00.

*Fourth.*—The company must be notified in writing in the event of an assignment of this contract before the same will be binding upon them.

*Fifth.*—The unpaid balance of purchase price may be

paid in full at any time and a discount of 5% will be deducted.

*Sixth.*—No interest will be charged on deferred payments. All taxes on this property will be paid by the Company until the maturity of this contract. Purchaser shall not be charged with any brokerage or commissions.

*Seventh.*—It is understood and agreed that this application is taken subject to previous sale of tract described and the Richardson-Kellett Company reserves the right to cancel any application by returning within ten (10) days the amount paid down on same.

*Eighth.*—Any failure on the part of the purchaser to make payments as stipulated in the application, forfeits his rights and interest in said contract and monies paid thereon.

*Ninth.*—It is mutually agreed that purchaser who buys without seeing the property be allowed thirty (30) days from the date of this contract in which to make a personal inspection of the property; and if the purchaser, after such inspection is not satisfied with the property for any reason whatsoever, he or she may then give notice in writing, and the Richardson-Kellett Company shall then refund all payments made by the purchaser; provided however that unless such written notice is received by the Richardson-Kellett Company within thirty (30) days of the date of acceptance of this contract, the contract shall be binding and in force.

## CERTIFICATE

## RICHARDSON-KELLETT COMPANY

### (INCORPORATED)

GENERAL OFFICE 329 PALACE BUILDING
MINNEAPOLIS, MINNESOTA.          Copy

*This is to Certify* That Charles S. Bathgate of Mandan, State North Dakota, has subscribed for one ten acre tract of land in Dade County, Florida, same being Tract No. 16, Block No. 2, Section 17, Township 54 S. Range 40 E., as described by the plat and literature of the Richardson-Kellett Company; and 'agrees to pay therefor Fifty Dollars ($50.00) per acre on the terms and conditions set forth in the application and contract on back thereof; which subscription has been accepted by said Richardson-Kellett Company.

On completion of the payments in the manner called for in said application, Richardson-Kellett Company agree to deliver to the said subscriber or his assigns a warranty deed in accordance with the terms and conditions therein specified.

Signed this 5th day of
November, 1913.

(CORPORATE SEAL)

RICHARDSON-KELLETT COMPANY,
By L. D. Richardson.

## EXHIBIT 'C'

Miami, Florida,
February 2, 1915.

Richardson-Kellett Company,
Minneapolis, Minnesota.

Gentlemen:

I herewith tender to you four hundred ninety dollars ($490.00) and demand a warranty deed to Tract No. 16, Block No. 2, Section No. 17, Township No. 54, South Range No. 49 South, according to the Government Survey thereof and according to your plat of the same, said tract and block is the same as the southeast quarter of the northeast quarter of the northwest quarter of said section.

This land was originally sold to Charles S. Bathgate on or about November 5, 1913. He has assigned to me all his rights under his contract. I exhibit to you with this latter my assignment of said contract with your consent thereto, endorsed thereon.

Very truly yours,

O. B. KLINE.

## EXHIBIT 'D'

*This Indenture* made this 2nd day of February, A. D. 1915, between Richardson-Kellett Company, a corporation existing under the laws of the State of Minnesota, having its principal place of business in the County of Hennepin and State of Minnesota, party of the first part, and O. B. Kline, of the County of Dade and the State of Florida, party of the second part.

*Witnesseth,* that the said party of the first part for and in consideration of the sum of four hundred ninety and 00/100 dollars, to it in hand paid, the receipt whereof

is hereby acknowledged, has granted, sold, aliened, remised, released, conveyed and confirmed, and by these presents doth grant, bargain, sell, alien, remise, release, convey and confirm, unto the said party of the second part and his heirs and assigns forever all that certain parcel of land lying and being in the county of Dade and State of Florida, more particularly described as follows:

Tract Number Sixteen (16), Block Number Two (2) Section Number Seventeen (17), Township Number Fifty-four (54), South, Range Forty (40) East, according to the Government Survey thereof, and also according to the Richardson-Kellett Company's plat of the same said tract and block being the same as the southeast quarter (SE¼) of the northeast quarter (NE¼) of the northwest quarter (NW¼) of the aforesaid section, township and range;

*Together* with all the tenements, hereditaments and appurtenances, with every privilege, right, interest and estate, reversion, remainder and easement thereto belonging or in any wise appertaining, saving and reserving unto the Trustees of the Internal Improvement Fund of the State of Florida, and their successors, the right at any time to enter upon the said lands and make or cause to be made and constructed thereon such canals, cuts, sluiceways, dikes and other works as may in the judgment of the said Trustees or their successors be necessary and needful for the drainage or reclamation of any of the lands granted to the State of Florida by act of Congress dated September 28, 1850, and to take from the said lands hereby conveyed and to use such gravel, stone or earth as

may in the judgment of the said Trustees or their successors be necessary to use in the making and construction of said canals, cuts, sluiceways, dikes and other works for the purposes aforesaid.

*To have and to hold* the same in fee simple forever. And the said party of the first part doth covenant with the said party of the second part that it is lawfully seized of the said premises; that they are free of all incumbrances and that it has good right and lawful authority to sell the same; and the said party of the first part does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomsoever.

*In Witness Whereof,* the said party of the first part has caused these presents to be signed in its name by its president and its corporate seal to be affixed, attested by its Secretary, the day and year above written.

RICHARDSON-KELLETT COMPANY,

(Corporate Seal)         By F. M. Dolan,
*Attest*:                           President.
    L. D. Richardson,
        Secretary.


*Signed, Sealed and Delivered in our Presence*:
    F. H. Siegel
    A. R. Beckman


STATE OF FLORIDA  }
COUNTY OF DADE.  } ss.

*I Hereby Certify* that on this 2nd day of February, A. D. 1915, before me personally appeared F. M. Dolan and L. D. Richardson, respectively President and Secretary of Richardson-Kellett Company, a corporation under

the laws of the State of Minnesota, to me well known to be the persons described in and who executed the foregoing conveyance to O. B. Kline and severally acknowledged-the execution thereof to be their free act and deed as such officers, for the uses and purposes therein mentioned; and that they affixed thereto the official seal of said corporation, and the said instrument is the act and deed of said corporation.

*Witness* my signature and official seal at Miami, in the County of Dade and the State of Florida the day and year last aforesaid.

F. H. SIEGEL,

Notary Public State of Florida.

My commission expires May 18, 1916."

The defendant answered the said bill as follows:

"1.    This defendant admits that it through its regularly authorized agents did, on the 5th day of November, A.D. 1913, enter into a written contract agreeing to convey Tract No. 16, of Block No. 2, in Section 17, Township 54, South, Range 40 East, as set forth in complainant's bill, and admits that Charles S. Bathgate paid a first payment of ten dollars upon the contract and agreed to pay the balance as set forth in said contract, and admits that this company, defendant herein, accepted the said application in good faith and executed the contract and certificate, copies of which are attached as exhibits 'A', 'B', and 'C', to complainant's bill.

2.    This defendant further answering admits the transfer and assignment by the said Charles S. Bathgate to the complainant O. B. Kline, and admits and acknowledges the tender of the balance due upon the said con-

tract by the said O. B. Kline as assignee of the said Charles S. Bathgate, and admits that under the said contract this defendant agreed to furnish to the said Charles S. Bathgate or his assigns a good and sufficient warranty deed.

3.   This defendant further answering says that immediately upon the tender to it by the said O. B. Kline of the balance due upon the said contract, it properly made, executed and tendered for delivery, and proffered to the said complainant a good and sufficient warranty deed, executed in proper form according to the laws of the State of Florida, and which said deed was properly witnessed, sealed, acknowledged and tendered to the said O. B. Kline, to-wit, copy of which is attached to the bill as Exhibit D, but he, the said O. B. Kline, declined and refused to accept said deed because of the fact that the said deed contained a clause or reservation, as set forth in complainant's bill, which said reservation was made at the time that the said described real estate, together with other lands, was deeded from the State of Florida to the first grantee, and which said reservation as described in the said deed and in complainant's bill of complaint is immaterial and does not invalidate the said deed, and this defendant contends that the said reservation is not an encumbrance upon the title, and that inasmuch as the State of Florida is possessed of the power of eminent domain that the facts that the said deed as proffered and tendered by this defendant contained said clause is surplusage and immaterial and does not in any manner invalidate the said deed.

4.   And this defendant further answering, says that under the Act of Congress of September 28th, 1850, the said lands, with other lands, known as swamp and over-

flowed lands, in the State of Florida, were granted by the United States to the State of Florida for the purpose of the drainage and reclamation of the said lands in accordance with the terms of the said Act, reference to which is hereby made, and the same is prayed to be considered and taken as a part of this answer.

5.   And this defendant further answering says that the State of Florida accepted the said grant of the said lands as made and provided in said Act of Congress, and that thereby the said State of Florida contracted with the United States to drain and reclaim said lands, and that the said duty, power, authority and right of the said State to drain and reclaim the said lands, and to take all the steps and to use all the means for those purposes, became and was a part of the said grant and the said contract thereunder, and attached to the title of the said State of Florida in and to the said lands.

6.   And this defendant further answering says that the State of Florida under and by the provisions of an Act of the Legislature adopted in 1855, namely, Chapter 610 of the Laws of Florida, vested said land in a separate and distinct fund, called the Internal Improvement Fund of the State of Florida, and vested the title of same in five trustees, and that said Trustees are the Governor of the State, the Comptroller, the State Treasurer, the Attorney General and the Commissioner of Agriculture, with power and authority to fulfill, perform and discharge all the duties and obligations of the trust existing at the time of the enactment of the said statute or provided for therein and authorized and required the Trustees to make such arrangements for the drainage of the said lands as in their judgment may be most advantageous to the Inter-

nal Improvement Fund and the settlement and cultivation of the said lands; that the title of the said Trustees and all persons claiming under them are subject to the said trust, as provided and expressed in the said Act, reference to which is hereby made, and it is prayed that the said Act and all amendments thereto be taken and considered as a part of this answer. And that the said Trustees at the time of the making of the said contract with complainant, and prior thereto, were actually engaged in the draining and reclaiming of the lands and territory of which the said lands described in said contract forms a part, to-wit, by means of a general system of public works all of which was known to the complainant at the time of the making of said contract.

7. And this defendant further answering says that under an amendment to the said Act, to-wit, Chapter 3326, of the Laws of Florida, Acts of 1881, any and all grants of said lands are subject to the trust to which said fund was applicable, and subject under the Act of January 6, 1855, to the control and management by the Trustees of the Internal Improvement Fund for the purposes of the said trust under said Act, reference to which is hereby made and prayed to be made a part of this answer.

8. And this defendant further answering says that under the said Act of Congress and the said laws of the State of Florida and amendments thereto that the said State of Florida, through the said Trustees of the Internal Improvement Fund, as a part of the title in and to the said lands, retains the right and duty of drainage and reclamation of the said lands and all powers and rights incident thereto, and that any and all sales or transfers of said lands by the said Trustees for the said State are

subject to the said provisions of the said Act of Congress and the laws of the State of Florida in reference to said lands and the duties and powers of the said Trustees, including the drainage and reclamation of the said lands.

That the several deeds of conveyance from the Trustees of The Internal Improvement Fund, and the persons or corporations under and through whom the defendant Richardson-Kellett Company acquired title to the lands involved in this cause, are subject to the said rights, powers and duty of the said Trustees to drain and reclaim the said lands as a part of the original title from the United States, by reason of and under the said Act of Congress, and on account of the nature of the said lands and of the title thereto, and that said deeds of conveyance from the said Trustees contain a reservation or reservations of said rights and duties of the said Trustees; and that this defendant is advised and so states that even if no specific reservation were contained in said deeds that such rights and duties enter into the law of the title to the said lands under the said Act of Congress and the said acts of the Legislature of the State of Florida, and that any and all persons taking title to the said lands take the same subject to said powers, rights and duties of the State of Florida, through the said Trustees to drain and reclaim the same, and to take all steps and do all acts necessary to those purposes.

9. And this defendant further answering says that the said reservation in the said deed complained of and set forth in the bill of complaint of the complainant herein, is not an encumbrance upon the title, but is a mere statement of the public purposes to which the said lands

were granted by the United States to the State of Florida, and of the duties and powers of the said State in reference thereto, and that said rights, duties and powers of the said State through the said Trustees of The Internal Improvement Fund enter into and are a part of any and all deeds of conveyance of the said lands, even if the same had not been expressly stated or reserved in the said deed of conveyance.

10. And this defendant further answering says that the complainant and every purchaser or grantee of said lands or any of said lands, since the said Act of Congress above mentioned, took and acquired the title to any of said lands subject to the said rights, duties and powers of the State of Florida through the said Trustees of The Internal Improvement Fund to drain and reclaim the said lands, and to exercise all necessary power and authority, and to do all acts for those purposes, and that the complainant took his title and chain of title to said lands subject to said rights, duties and powers of the said State and of the said State acting through the said Trustees of The Internal Improvement Fund.

11. And this defendant further answering says that the said reservation in the said deed as set forth in complainant's bill of complaint, is not an encumbrance upon the title of said lands conveyed to said complainant, or offered to be conveyed, and is not any violation of the warranties provided for or set forth in the said contract mentioned in the said bill of complaint, but is a mere statement of the public duties and powers of the State of Florida and the Trustees of The Internal Improvement Fund acting for the State of Florida as provided for by law as hereinbefore set forth, and does not and will not

diminish the value of the land to the purchaser or the complainant, or encumber the title, as stated in the said bill of complaint, as the State of Florida is required by law and must in the exercise of said powers to drain and reclaim the said lands preserve or increase the value of the said lands, and it is contemplated by the said laws that the same shall be drained and, reclaimed, and thereby the value thereof increased and not diminished, and the title not encumbered.

12.    And this defendant further answering says that the complainant and every purchaser or grantee deriving any right, title or interest in or under the title from the Trustees of The Internal Improvement Fund of the State of Florida of said lands, including the said lands claimed by the complainant in his bill of complaint, took their right, title or interest in said lands with notice of and subject to the said trusts and purposes with which the said, lands were held by the State of Florida and the Trustees of the Internal Improvement Fund, and that the alleged warranties in the alleged contract with the complainant mentioned in the bill of complaint do not cover or provide against the said trust or reservation of the said rights by the said trustees of The Internal Improvement Fund, subject to all the said original trusts, powers and duties of the said Trustees of the said Internal Improvement Fund, and of any and all reservations for said purposes.

And this defendant further answering says that it herewith tenders said deed with the said reservation therein, and, prays the honorable court that the complainant be compelled to receive the same and pay to this defendant the amount of money which he alleges he ten-

ders into court, and this defendant here says that it stands ready to abide by whatever decree in the premises that this honorable court shall make.

*Wherefore,* this defendant, having answered the said bill of complaint, prays to be hence dismissed with its said costs."

After replication filed the cause was set down for hearing on the bill, answer and replication, and by agreement between the respective counsel was heard on the bill, answer and replication, and on such hearing the judge below rendered the following final decree as prayed for in the bill: "The above styled entitled cause coming on to be heard upon the Bill of Complaint and its exhibits, Answer to said Bill and General Replication thereto, on the 13th day of April, A. D. 1915, and counsel for complainant and defendant having entered into a written agreement to submit the said cause for hearing and final decree, and said cause having been duly argued by counsel for complainant and defendant, and the court being fully advised in the matter, is of the opinion that the complainant is entitled to the relief as in his Bill prayed.

*It is therefore ordered, adjudged and decreed* That the Richardson-Kellett Company, a corporation, defendant, within thirty (30) days from the date of the entry of this Decree, do execute and deliver to O. B. Kline, complainant, a good and sufficient warranty deed of conveyance without restrictions or incumbrances, conveying to him, the said O. B. Kline, in fee simple the following described property situate in the County of Dade and State of Florida, to-wit: Tract No. Sixteen (16) of Block No. Two (2) in Section Seventeen (17) in Township Fifty-four (54) South of Range Forty (40) East; and that upon

the execution and proffer of delivery of said deed, the said O. B. Kline do pay into the hands of the Richardson-Kellett Company, or their agents, or legal representatives, the amount of money tendered as a balance due on the purchase price of the said described property as set forth in said Bill of Complaint.

*It is further ordered, adjudged and decreed* that the said O. B. Kline, complainant, do recover of and from the said Richardson-Kellett Company, defendant herein, all courts costs expended in and about the prosecution of this suit.

*Done and ordered* in Chambers at Miami, Florida, this 21st day of April, A. D. 1915."

The defendant below brings this decree here for review by appeal, assigning the said decree as error.

*John C. Cooper & Son,* and *T. F. West, Attorney General,* for Appellant;

*Sanders & Norfleet,* for Appellee.

TAYLOR, C. J., (*after stating the facts.*)—Ordinarily the reservation of such a right over the land conveyed as the one reserved here to the Board of Trustees of the Internal Improvement Fund of the State of Florida, would be an incumbrance upon the title, but under the circumstances surrounding the land in question, its situs, character and the title thereto, we do not think that it is such an incumbrance of which the appellee has any right to complain. The land in question is a part of what is known as the Everglades in the extreme southern end of the peninsula of Florida, a vast territory of several millions of acres that is in major part at least, if not wholly

unfit, because of its swamp or overflowed condition, for either habitation or cultivation, unless it be reclaimed by thorough drainage. They form part of that vast territory granted to the State of Florida by the Congress of the United States known as swamp and overflowed lands for the purpose of being reclaimed by drainage. They in turn were vested in trust for the same purpose, by State legislation in the said Board of Trustees of the Internal Improvement Fund of the State. In execution of its trust this State Board of Trustees are now, and were at the time of the conveyance of the land in question to the grantors of the appellee, engaged in the vast and costly work of draining the said Everglades, and when they sold any part of the said Everglades land in advance of the drainage thereof, it was a wise precaution on their part, charged as they were with the duty and expense of reclaiming the same by drainage, to reserve in their deeds conveying the same, the right to go upon the land conveyed at all times but solely for the purpose of the betterment thereof by drainage in the proper exercise of their trust. All of these facts were, or should have been, well known to the appellee when he contracted with the appellant for the purchase of the tract in question. The proposed reservation in the deed tendered by the appellant does not undertake to reserve any part of the technical fee in the land, but simply perpetuates in the Board of Trustees of the Internal Improvement Fund the same reservation contained in their deed to the appellant, viz, the bare right to go upon the land for the sole purpose of carrying out the scheme of draining and improving the Drainage District in which this land lies; the Drainage District having been theretofore specifically identified and named by a public act of the Legislature.

See Chapter 5709, Laws of 1907. We do not think that the appellee has any right to complain, under the circumstances here, of the reservation contained in the appellant's deed tendered to him, providing as it does solely for the right to go upon the land conveyed thereby to better the same in common with other similar and adjacent lands by drainage, not at the cost of the grantee appellee, but at the cost of the State.

It follows from what has been said that the decree appealed from must be and is hereby reversed at the cost of the appellee.

SHACKLEFORD, COCKRELL, WHITFIELD and ELLIS, JJ., concur.