## Bashford, Appellant, v. West Miami Land Co.

562

Argued October 5, 1928.   Before Moschzisker, C. J.,
Frazer, Walling, Simpson, Kephart and Sadler, JJ.

*William S. Dalzell,* of *Dalzell, Fisher & Dalzell,* for
appellant.—When defendant covenanted to convey to
plaintiff a title in fee simple, "clear of all encumbrances
(except the mortgage named)," it bound itself to convey
to plaintiff an absolutely clear title, and having failed
so to do plaintiff became entitled not only to the right
to rescission of the contract but also to recover hand
money paid and any expenses incurred in connection
therewith: Dobkin v. Landsberg, 273 Pa. 174; Patter-
son v. Freihofer, 215 Pa. 47; Strong v. Brinton, 63 Pa.
Superior Ct. 267; McDermott v. Reiter, 279 Pa. 545;

Orth & Bro. v. Board of Education, 272 Pa. 411; Ritter v. Hill, 282 Pa. 115; Evans v. Taylor, 177 Pa. 286.

Where the contract provides that the decision of a given question shall be decided by a referee or by arbitration, that provision is binding on the parties, and the courts will enforce its provision: Wilson v. Getty, 57 Pa. 266.

If the vendor cannot make such a title as the vendee is bound to accept, he must refund what has been paid: Nicol v. Carr, 35 Pa. 381; Herman v. Somers, 158 Pa. 424; Holmes v. Woods, 168 Pa. 530; Mitchell v. Steinmetz, 97 Pa. 251; Black v. Am. International Corp., 264 Pa. 260.

*Louis Caplan,* of *Sachs & Caplan,* with him *J. I. Simon,* for appellee.—Barns acted solely as plaintiff's attorney, and not as a "court of first instance": Mitchell v. Minnig, 68 Pa. Superior Ct. 306; Dillinger v. Ogden, 244 Pa. 20.

Plaintiff and his Florida attorneys made arbitration impossible.

Plaintiff's present position with reference to the surety bond, interest and taxes is without merit: Myers v. Trust Co., 290 Pa. 283.

As the record stands, defendant's title is without a flaw: Spellier Electric Time Co. v. Geiger, 147 Pa. 399; Brackenridge v. Claridge, 91 Tex. 527.

OPINION BY MR. JUSTICE KEPHART, November 26, 1928:

Plaintiff, Bashford, on December 22, 1925, agreed to purchase from defendant, the West Miami Land Co., certain Florida real estate. By the terms of the agreement, the land was to be conveyed in fee simple, clear of encumbrances except a mortgage; taxes and interest payments due were to be prorated as of the date of closing the deal. Time was of the essence of the contract, and February 20, 1926, was fixed as the day for settlement. "Paul D. Barns, an attorney of Miami, was to ex-

amine and pass upon the abstract of title," to be furnished by defendant not later than January 1, 1926. The sum of $50,000 of the purchase price of $258,000, to be paid as hand money, was, in accordance with an escrow agreement, deposited with the Pennsylvania Trust Company of Pittsburgh, to await fulfillment of the contract. In case of default on vendee's part, this sum was to be treated as liquidated damages and forfeited to vendor.

Barns, by letter, reported to the trust company, as the escrow agreement required, and to defendant, as the contract specified, stating that there were liens and encumbrances affecting the marketability of the land as follows: outstanding taxes, interest, mechanics' liens, optional agreements for the sale of the land, and a reservation in a deed in the chain of title giving to the trustees of the Internal Improvement Fund of Florida the right to enter on the lands for the purposes of making canals, cuts, sluices, dykes and other works needful for the drainage and reclamation of the said land.

On the day fixed for settlement, the parties finally disagreed because, as averred by plaintiff, the title promised could not be given, and he thereafter instituted a bill for cancellation of the contract. Defendant's answer denied all material allegations, claiming the money in escrow. The court below, after hearing, sustained defendant's position; by agreement of the parties, the trust company consenting, if the decree was not in plaintiff's favor, the trust company was to pay the escrow money to defendant, and it was so ordered; this appeal followed.

The questions before us are many, but they may be summarized as follows: What was Judge BARNS's relation to, and the scope of his authority in, the transaction? On whom did the burden of proof lie to show failure of performance under the contract? What was the function of the arbitration clause in the agreement? Did vendee or his counsel waive the contract provisions

through dilatory tactics, and was plaintiff entitled to cancellation and a return of the hand money?

The agreement reads, in addition to that quoted above: "Should an examination of the abstract of title develop liens or encumbrances affecting the marketability of [the] lands, which......Barns will not pass or approve, and which cannot be cured by surety company bond......, then the same is to be referred to J. I. Simon, attorney......, no later than January 15, 1926, to afford an opportunity to......Simon to cure defects; if......Barns still is unable to accept such title, the matter in difference shall be referred to the arbitration of three competent lawyer arbitrators, one to be chosen by each of the parties hereto and they to choose a third." It is contended that the court below found that Barns, in disproving the title, acted solely for plaintiff. The contract plainly provides otherwise. He was the person selected by the parties to act in designated matters, and it is quite common for a vendee's counsel to be made the sole referee to pass on the title. His duties involved more than a mere examination of the abstract of title for technical defects as attorney for vendee. They were concerned with matters not necessarily associated with an opinion on the validity of the title. He was to determine whether these were liens and encumbrances affecting the marketability of the land, as distinct from the title. This involved the finding of a fact, the effect of matters appearing on the record as related to circumstances surrounding the land as such, resulting in an impairment of marketability, as will be shown when the reservation is discussed. He was to approve a bond if minor liens could be cured by a bond; this was not part of the ordinary duties of a lawyer passing title to land. If he still refused, within the limits of the authority conferred on him, to accept the conveyance, defendant having had an opportunity to cure the defects, arbitrators were to be then appointed. Barns's duties, performed in good faith, were closely allied to those of a referee: Wilson

v. Getty, 57 Pa. 266. Compare Mitchell v. Minnig, 68 Pa. Superior Ct. 306; and see Dillinger v. Ogden, 244 Pa. 20, 25; Mathews v. Caldwell, 258 S. W. 810; Kincaid v. Dobrinsky, 225 Ill. App. 85. But the door was not closed to the vendor. It had a court of arbitration to be selected by the parties, to which appeal could be made to pass finally on the dispute. The matter of the referee's duty not having been excepted to, is fairly raised and germane to the assignments.

The burden is on the vendee, in an action for the return of hand money, to show he has an undoubted right to have the money back. If he claims by reason of a title not measuring up to the terms of the agreement, he must show wherein the title fails: Dozier v. Union Bank & Trust Co., 146 Ark. 386; Reynolds v. White, 118 N. Y. Supp. 979; Scharrath v. Dermody, 117 N. Y. Supp. 968; 39 Cyc. 2065. But where the bill for cancellation involves money held in escrow by a third person, as here, then the rule applicable to the vendor is similar to that in an action for specific performance or for damages for breach of contract. The money was not in the vendor's hands, and defendant company had no right to it until there was strict compliance with the agreement. It was merely a deposit toward the purchase price, to be forfeited in case of default. To profit by the forfeit, and enforce the contract, vendor must show not only that vendee had repudiated the contract but that it was able itself to give a good title, clear of encumbrances: Hampton v. Speckenagle, 9 S. & R. 211, 222. Vendee proved the contract and the steps leading up to and including the report of the referee. The burden then shifted to defendant to show performance, and any attack on the referee's decision was limited to proof that he had acted capriciously by disapproving a title which in fact was free from liens or encumbrances which affected the marketability of the land. Where no such liens exist, the referee, by capriciously reporting that they did, could not defeat the sale. But if the vendor

cannot establish a good title, the vendee is not bound to accept, nor is the vendor entitled to any part of the purchase money: Nicol v. Carr, 35 Pa. 381; Mitchell v. Steinmetz, 97 Pa. 251; Herman v. Somers, 158 Pa. 424; Holmes v. Woods, 168 Pa. 530; Black v. American International Corp., 264 Pa. 260; Myers v. Fidelity-Philadelphia Trust Co., 290 Pa. 283.

Neither side submitted evidence of title, except as to the reservation which will be later discussed, and defendant urges that, inasmuch as the case was tried on the theory that the purchase money was in its possession, the rule as to hand money should apply. However this may be, it was not done in fact, and, as the record is not clear on the question, it must be remembered that the bill was for cancellation of the contract, and that it was through that medium equity acquired jurisdiction.

The agreement did not mention the arbitrators to whom the matters in dispute should be submitted, leaving their selection to the future; under these circumstances, the vendor now claims that the arbitration agreement was revocable by either party (Commercial Union Assurance Co. of London v. Hocking, 115 Pa. 407, 414), and that Bashford having revoked the submission, the entire provision for approval of the title fails. This position comes rather late, as it was not taken in the court below; in any case, we call attention to the rule in force in this State as to agreements to arbitrate disputes then presently existing, where arbitrators are not named, which states that where the agreement partakes of the nature of a contract, in which important rights are gained or lost, and the submission is one of the moving considerations, it can be revoked only by mutual consent: Pennsylvania cases cited in 5 C. J. 56. The authorities have not applied the rule to prospective controversies wherein arbitrators have not been named, but it is peculiarly applicable here. Where arbitration has to do with the very subject-matter of the contract on which the existence of the parties' obliga-

tions depend, and has been in part executed, it is beyond the power of one of the parties to revoke; such action would, in this case, change the effect of the whole agreement, which was to give the vendor a right to review the referee's findings.

The arbitration clause was placed in the contract for vendor's benefit, and, after Barns reported adversely, the vendee could not revoke the arbitration. No effort was made by the *vendor* to select arbitrators, and, as the matter then rested under the contract, the decision of Judge BARNS, if reached in good faith, was the final determination. Where parties to an executory contract agree to submit the matter in dispute to a named individual, they are bound by their contract and cannot seek redress elsewhere until the arbitrator chosen has been discharged either by the rendition of an award or otherwise (Commercial Union Assurance Co. of London v. Hocking, supra, 414), and this rule is now applicable, under the Act of April 25, 1927, P. L. 381, where the contract provides for arbitration, but the arbitrators are not named. It is clear, every reasonable intendment will be made in favor of the validity of such agreements: Curran v. Phila., 264 Pa. 111, 120.

Nor do we agree that, under the circumstances, arbitration was a condition precedent to enable the vendee to secure the hand money from the trust company; had vendor performed by the appointment of an arbitrator, a different question would arise even where vendee refused to act.

We have carefully reviewed the evidence, the court's findings based thereon and inferences therefrom. We discover nothing to support the conclusion that vendee and his attorney adopted dilatory tactics or acted in bad faith. We will not discuss the matter extensively as the facts are of interest to the parties only. The table of events shows plaintiff acting with reasonable promptness. Simon was notified January 28th of defects. Notwithstanding the intimation that the parties

might waive them, there was nothing to warrant an assumption they ever were waived; nor was there anything to mislead. Prudence would have spurred immediate action. Instead, defendant asserted the title was clear and it was going to close the deal. Vendor proceeded on the theory that vigilance was all on the vendee's side. When the parties met in Florida, some desultory talk was indulged in with regard to arbitration, but no forward step was taken by either side toward naming an arbitrator. Defendant, at the final settlement, did not come relying on performance under the contract. Though some objections were met by quitclaim deeds, there were outstanding liens unadjusted, and taxes unpaid. Then there was the reservation in the trustees of the state. Plaintiff had not excused performance of these requirements. No bond was offered or tendered. There was an offer to give a title insurance bond, but that was not a term of the contract. Plaintiff was not required to produce a statement of taxes and liens. Defendant was to deliver a deed in fee, clear of encumbrances. Such title was not tendered. Vendor was not misled; it sensed plaintiff might want to get out of his contract before counsel left for Florida.

The land was to be in "fee simple," and if there were "liens or encumbrances affecting the marketability of the lands," the title was to be disapproved. In other words, Barns was to find in the abstract any defects that had a tendency to affect the sale of the land. The question was not merely whether they affected the title, though an encumbrance on the title would undoubtedly result in a failure to secure the land's market value; the former must be ascertained by considering the extent of the lien (here the reservation) on the possibilities of selling the land advantageously. Would the lien have a tendency to impair the sales value of the land? The land company does not deny the reservation, but plants its right to recover on Richardson-Kellett Co. v. Kline, 70 Fla. 23, 69 So. 203, where it was held that rights

570

reserved as above were of a public nature and should not be considered as affecting a fee title. While this contention, viewed from the Florida decision, may be sound, the contract before us did not make that court or this court the judge, not of the marketability of the title as a fee, but of the marketability of the land as affected by those liens. That judge was BARNS. The chief justice of Florida, speaking of this reservation, said: "Ordinarily the reservation of such a right over the land conveyed as the one reserved here to the board of trustees ......would be an encumbrance upon the title, but under the circumstances surrounding the land in question ......we do not think that it is such an encumbrance of which the appellee has any right to complain"; and such conclusion was no doubt correct in that case, but, as stated above, Judge BARNS was to decide, after "an examination," whether liens or encumbrances which he would not pass or approve affected the marketability of the land. Marketability of land has a wider significance than marketability of title. His report on the abstract, regardless of arbitration, made in good faith, as the record unquestionably shows, presented to defendant an insuperable barrier either against securing the hand money or keeping it if paid, and warranted an annulment of the contract.

Defendant covenanted to convey a title in fee, which means an absolute title, clear of encumbrances, except as mentioned, and where this cannot be done, the vendee has a right to rescind his contract, and is entitled to a decree of cancellation. This is true even where a vendor agrees to convey a fee title and the vendee knows that a serious defect exists; by his contract, vendor, in covenanting to deliver a fee, agreed to cure the defect and make the title perfect: Evans v. Taylor, 177 Pa. 286; Patterson v. Freihofer, 215 Pa. 47; Dobkin v. Landsberg, 273 Pa. 174; McDermott v. Reiter, 279 Pa. 545; Ritter v. Hill, 282 Pa. 115; Lehman v. Paxton, 7 Pa.

Superior Ct. 259; Strong v. Brinton, 63 Pa. Superior Ct. 267.

The court below, because of the agreement already referred to, made an order directing the trust company to pay to appellee the money held in escrow. We now reverse that order, and it is ordered that the bill be reinstated, and that the court below make a decree cancelling the contract, and directing the Pennsylvania Trust Company to pay the money held in escrow to appellant, James D. Bashford.

Decree reversed with a procedendo; costs to be paid by appellee.