## THOMAS v. WOOD et ux.

Circuit Court of Appeals, Fifth Circuit.
February 5, 1930.

Rehearing Denied March 7, 1930.

No. 5590.

Jos. S. White, of West Palm Beach, Fla., for appellant.

James H. Willock, of Miami, Fla., and Jesse A. Fenner, of Cleveland, Ohio, for appellees.

Before BRYAN and FOSTER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is an appeal from a decree of the District Court for the Southern District of Florida. The appellees (vendors) filed a bill for specific performance in that court against the appellant (vendee) of a contract for the sale and purchase of lands. The court below decreed specific performance and rendered a general decree for the unpaid purchase money ($9,000) against the appellant, with interest from March 10, 1926, until paid.

The appellant makes three complaints of the decree.

First. He says that the record does not show that a good and merchantable title was shown by the abstract furnished, as was required by the contract.

Second. That because of misrepresentations made by one, assuming to be an agent of appellees, to the appellant, regarding the location of the lands in question, appellant was entitled to rescind the contract.

Third. Because the final decree is erroneous, in that it provides for a general decree against the appellant, upon which an execution may issue.

1. The contract required the appellees to deliver an abstract showing good and merchantable title 10 days before the trade was closed. Appellant, through the Citizens' Bank, received the abstract, brought down to date, on February 26, 1926. No objection on

the part of appellant was made to the title shown by the abstract within the 10 days from its receipt. The alleged defects were first relied upon in the answer of appellant filed in this suit. In the meantime, through the telegram of the Citizens' Bank, he had repudiated the contract upon the ground that he was not able then to take up the papers, and later upon the ground that the lands did not adjoin the Cross State Highway, as represented. The defects were waived by the delay, if they were in fact defects. No map was required to accompany the abstract. The description of the lands in the contract identified them fully. Any unpaid taxes, if they had been established, would have been adjusted in the closing of the trade, and constituted no defect in title. The fact that the title from the trustees of the internal improvement fund of the state of Florida contained restrictions, relative to canal rights and easements for lateral ditches, did not constitute a defect in the title, if proven. That such a restriction was not an incumbrance upon the title was held by the Supreme Court of Florida in the case of Richardson-Kellett Co. v. Kline, 70 Fla. 23, 69 So. 203. The restrictions are a matter of public knowledge, and the parties dealing with the title contract with reference thereto and the restrictions become a part of the contract of sale and purchase.

▇ 2. The appellant defends also upon the contention that one Windham, purporting to act for appellees, though without their knowledge or authority, represented to appellant that the lands in controversy abutted on the Cross State Highway, when in fact they did not so abut. It is without dispute that Windham had no authority to act for appellees in negotiating the sale of their lands, and that they did not even know him at that time. The principle invoked by appellant is that, if one, who is a stranger, assumes to act as agent for another, and in his name makes a contract, the other person adopts the contract with its burdens, and ratifies the agency, by bringing suit upon the contract; and ratifies also any representation made by the agent, relied upon by the purchaser.

To bring himself within this legal principle, appellant must establish that the alleged agent, Windham, did in fact assume to act as agent for the appellees, in making the sale, and that the buyer relied upon representations made by the alleged agent.

We think the record shows that Windham did not assume to act as agent for the appellees, and that the legal principle relied upon by appellant is consequently not applicable to this case.

Appellees lived in Cleveland, Ohio, and Windham did not know them. Windham and appellant lived in Florida. Windham was finding lands for appellant. In doing this he found out that appellees were the owners of the lands in controversy and so informed appellant. Windham and appellant procured a map which showed the lands, and from it jointly concluded that the lands abutted on the Cross State Highway. Windham's evidence indicates that appellant placed no reliance upon Windham's superior knowledge of the location of the lands, as he knew that Windham relied upon the same map as he did for his information. Appellant and Windham went out together to inspect the lands. After having done so, Windham wired the appellees in his own name, and not in the name of appellant, submitting them an offer for the lands, and the offer was finally accepted by wire by appellees. Windham turned the telegram over to appellant and disappeared from the negotiations, which were thereafter conducted for appellant in his own name by the Citizens' Bank, resulting in the execution by both parties of the contract sued upon, and the payment of $1,000 by appellant. Windham did not assume to act as agent in the correspondence which he conducted with appellees, and they had no notice that he was doing so. The Citizens' Bank acted for and in the name of appellant, and referred to Windham only to identify the terms of the contract as being in accordance with the wire of appellees to Windham. Windham testified that he had no authority to sell, but only to buy. Appellant testified that he did not know whether Windham represented appellees or represented himself. The price Windham quoted appellees was the net price to them, and Windham would have secured no benefit from them and expected none. The inference is that he served appellant and was to get his recompense from appellant. The written contract made no mention of any relation the lands sold bore to the Cross State Highway, and it was prepared by appellant. So the transaction was that Windham made an offer for the lands to appellees in his own name and behalf, and, when it was accepted, turned it over to appellant, and appellant adopted it and dealt directly with appellees, and not through Windham as their agent. Though the contract was made in December, 1925, no point was made on Windham's assumption of agency until July 10, 1926, though the contract was repudiated by appellant on April 27, 1926, through the

Citizens' Bank. The delay in assertion militates against the good faith of the defense. We conclude that Windham did not assume to act for appellees, but acted either for himself or the appellant in securing the acceptance of his offer from appellees; and if, for himself, that he subsequently transferred the trade to appellant, and that appellant had no right to rely upon any representations made by Windham, as proceeding from appellees, and that he did not do so. The evidence is convincing that Windham, who was engaged in finding lands for appellant, located the ownership of these lands in appellees and so reported to appellant; that Windham and appellant, having secured a map, together went to the lands and mutually came to the conclusion that they were on the Cross State Highway; and that, as appellant knew, Windham did not make any representation to appellant as to the location of the lands, assuming to act for appellees, or any representation upon which appellant relied. The contract was valid, and the District Court rightly decreed its performance.

█ 3. The form of the decree is criticized, because it contains a general decree upon which an execution can issue against the appellant. The appellant contends that the lands should have been ordered sold in the event that the appellant did not pay the balance of purchase money, as in the case of a foreclosure. The latter form of decree is a permissible one, but it is not exclusive. In the case of Booth v. Bobbitt, 94 Fla. 704, 114 So. 513, the Supreme Court of Florida held that the remedy by specific performance was mutual and might be invoked by the vendor seeking to enforce payment of a specific sum of money; that a tender of a deed by the vendor, as required by the contract, was necessary, but might be conditioned upon performance by the vendee and payment of the amount due on the purchase money; and that, where the vendor was seeking to require the vendee to perform by paying a balance of purchase money due from him, a prayer that, upon his failure to do so, an execution might be issued against him for the balance found to be due, was usually an appropriate one.

The case of Smith v. Smith, 84 N. J. Eq. 299, 93 A. 890, 894, relied upon by appellant, holds that "an absolute decree for the price, with execution in the usual general form, while the vendor was allowed to remain the owner of the property which he agreed to sell and is clothed with power to dispose of the same as he may see fit" is improper. In the instant case, a deed for the lands sold was tendered and attached to the bill of complaint and delivery thereof offered in the prayer of the bill. Moreover, the final decree not only permitted, but directed, the appellant to take delivery of the deed from the court. When the vendee gets title to the lands he contracts for, there is no impropriety in permitting the vendor to recover the unpaid purchase money under a general decree, on which execution will lie.

There being no error in the record, the decree is affirmed.