## Seligman et ux. v. Maund et ux.

*Louis A. Bloom* and *Richard B. Malis*, for plaintiffs.
*Reilly & Pearce*, for defendants.

BRETHERICK, J., January 31, 1955.—The action is in assumpsit by the vendees against the vendors to recover hand money paid pursuant to the terms of a written agreement for the sale and purchase of a dwelling house.

By written agreement of counsel, the case was tried before a judge without a jury. See Act of April 22, 1874, P. L. 109, 12 PS §688 et seq. The trial resulted in a finding in favor of plaintiffs for the full amount of their claim.

The case is before us now on defendants' exceptions to the trial judge's findings of fact, conclusions of law and decision, and to his failure to make findings of fact, conclusions of law, etc., as requested.

The facts may be briefly summarized as follows: The agreement was dated February 4, 1952, and called for settlement on or before March 1, 1952, "and said

time is hereby agreed to be the essence of this agreement." The contract contained the usual provision for the retention by the sellers of the hand money in the event of the buyers' default. At the time of the execution of the agreement, the house was still in the course of construction by husband defendant, and it was provided in the agreement, inter alia, "House to be finished graded and seeded."

The agreement also contained the following provision:

"Title is to be good and marketable and such as will be insured at regular rates by any responsible Title Insurance Company; otherwise the buyer shall be repaid his deposit money paid on account and shall also be reimbursed for the cash outlay which he may have been put to for Title Insurance and drawing papers."

Very shortly after the execution of the contract, plaintiffs repented of their bargain, and there were negotiations between buyers and sellers looking toward the cancellation of the agreement. The upshot of these negotiations was that the parties entered into a supplemental written agreement dated February 29, 1952, by which, inter alia, the settlement date was extended to March 17, 1952.

On March 17, 1952, at the appointed time, plaintiffs and defendants appeared for settlement at the offices of the title insurance company. The trial judge found, upon sufficient evidence, that the purchasers were then and there ready, able and willing to complete the purchase of the premises in full accordance with the terms, covenants and conditions of the written contract. Defendants presented a deed of conveyance covering the premises, a release of liens, and also offered to pay the premium of one half of one percent for insurance against actual loss by reason of possible unfiled mechanics' liens. The title company, however, refused to insure the title to the premises as good and market-

able, and the settlement clerk placed on the settlement certificate the following notation:

"Except Unmarketability of title by reason of possible unfiled mechanics liens is excepted but actual loss by reason thereof is hereby insured against."

Plaintiffs, thereupon, on advice of counsel, refused to complete the settlement, rescinded the contract of sale and demanded of defendants the return of their hand money, stating as their reason therefor defendants' inability to convey a good and marketable title in accordance with the terms of the contract. Defendants refused to refund the hand money, and have steadily persisted in such refusal.

Within a day or two after March 17, 1952, the title company agreed with defendants to remove from the settlement certificate the exception relating to unmarketability of title by reason of possible unfiled mechanics' liens, and to insure title to the premises free and clear of such exception. Defendants thereupon notified plaintiffs of the title company's agreement, and called upon them to make settlement for the premises on or before March 28, 1952. Plaintiffs ignored defendants' demand, and failed to arrange or appear for settlement in accordance with the notice.

The trial judge concluded that, under the terms of the contract, defendants were bound to convey to plaintiffs a title good and marketable and such as would be insured at regular rates by any responsible title insurance company; that on the day fixed for settlement, March 17, 1952, defendants were unable to convey such title; that plaintiffs were not bound to accept insurance against loss by reason of possible unfiled mechanics' liens, in lieu of a good and marketable title; that, therefore, plaintiffs were entitled to rescind the contract and recover back the portion of the consideration they had paid. The trial judge further concluded that, since by express provision thereof time was of

the essence of the contract, plaintiffs were under no obligation to accept a conveyance from defendants after March 17, 1952, the time appointed for settlement; and that, in any event, at no time between March 17, 1952, and March 28, 1952, were defendants able to convey to plaintiffs a title good and marketable and such as would be insured at regular rates by any responsible title insurance company.

As defendants state in their able brief of argument, the exceptions before us raise three questions. Defendants first ask, "Are the vendees by knowledge of the facts and the inclusion in the agreement of sale of the requirement that work be completed, estopped from now complaining that the title is unmarketable?" Defendants argue that plaintiffs knew when they executed the agreement of February 4, 1952, calling for settlement on March 1, 1952, that there was work still to be done on the property, and, indeed, a clause was inserted in the contract requiring such work to be done; that plaintiffs must be presumed to know that any work done within six months of the date of settlement would raise a question as to the possibility of unfiled mechanics liens; and that, therefore, plaintiffs must be considered to have waived the clause in the agreement calling for good and marketable title. The argument has much to commend it in the way of logic and reason, and we might well be inclined to agree with defendants' conclusion if the question were an open one in this Commonwealth.

The rule appears to be well settled that knowledge of defects or encumbrances does not affect an express stipulation or convenant in the contract or deed that the title shall be good or that the conveyance shall be free from encumbrances: 66 C. J., Vendor and Purchaser, §858. Our own cases are in full accord: Evans v. Taylor, 177 Pa. 286, 289; Patterson v. Freihofer, 215 Pa. 47, 49; McDermott v. Reiter et ux., 279 Pa.

545, 547; Nauman v. Treen Box Co., 280 Pa. 97, 99; Ritter v. Hill et al., 282 Pa. 115, 120; Bashford v. West Miami Land Co., 295 Pa. 560, 570; Lewis to use, v. Hamilton's Execs. et al., 301 Pa. 173, 175; Strong v. Brinton, 63 Pa. Superior Ct. 267, 271; Moyer v. DeVincentis Con. Company, 107 Pa. Superior Ct. 588, 593; Geyer v. Walton et al., 151 Pa. Superior Ct. 549, 555.

It is true that in some jurisdictions the rule is subject to an important qualification. For example, in Bacot v. Fessenden, 119 N. Y. S. 464, the court, after citing the general rule said:

" 'If the encumbrance be of a kind which the vendor cannot remove, such as an easement, it is not to be presumed that the purchaser, knowing the existence of the easement, intended the insertion of a vain provision in the contract.' "

However, so far as we have been able to discover, our own authorities recognize no such qualification or limitation, as a reading of some of the cases above cited will disclose.

Defendants next ask, "May vendees rescind contract without allowing vendors opportunity to clear up defect in title?" In our view, the title to the premises was unmarketable by reason of possible unfiled mechanics' liens, and the title company evidently was of the same opinion at the time of settlement. The title remained unmarketable during the statutory period for the filing of liens. Plaintiffs were certainly under no obligation to await the expiration of that period, particularly since time was expressly of the essence of the agreement.

"Time was of the essence of the contract between these parties. Such was their plain agreement. The plaintiff was, therefore, under no obligation to await the outcome of the defendant's negotiations with the auditor general. When it became apparent that the

defendant wished to fob off upon him a title encumbered in a 'very considerable sum' and that against the uncertain extent of the liability of the land for this charge he was expected to be content with the policy of insurance issued by a private corporation, he was undoubtedly justified in declaring his contract with the defendant rescinded and in demanding the return of what he had paid the defendant, with the amount of his reasonable outlay on the faith of the contract": Rugg v. Midland Realty Company, 261 Pa. 453, 456.

The argument is made that if a reasonable opportunity had been afforded, "the defect would have been removed as is proven by the testimony of the title officer of the Commonwealth Title Company". But it is clear that the title company's subsequent agreement with defendants to insure title to the premises as good and marketable could not make it such.

Finally, defendants ask, "Is the title good and marketable when reputable title company will insure the same?" We have answered this question in the preceding discussion. The ipse dixit of a title company cannot transform a defective title into a good and marketable title. We think defendants have misread our opinion in Siddall v. Painter, 84 D. & C. 591. What we actually held there was:

". . . the fact that the Title Abstract Company would insure this title at regular rates was compliance by defendant with the terms of the agreement of sale and required plaintiff to accept the title". (The terms of the agreement of sale required title to be good and marketable).

The testimony in the case at bar establishes that the title company never agreed to insure the title at regular rates.

Much has been said in the course of these proceedings respecting plaintiffs' motives in rescinding the contract. It is our opinion that, in the circumstances

presented, plaintiffs were justified in their action.

"Where a party has a right to cancel a contract, his supposed reasons for doing so are wholly immaterial" (syllabus) : McDermott v. Reiter ex ux., 279 Pa. 545.

### Order

And now, January 31, 1955, upon consideration of the foregoing case, it is ordered, adjudged and decreed that defendants' exceptions to the action of the trial judge are dismissed, and judgment is hereby entered in favor of plaintiffs and against defendants in the sum of $2,100.